John W. YOUNG, Commissioner, Kentucky Department of Labor, et al., Appellants,

v.

Marcus YOUNG et al., Appellees.

Court of Appeals of Kentucky.

Nov. 6, 1970.

Martin Glazer, James F. Perkins, Dept. of Labor, Frankfort, Ky., for appellants.

Denver Adams, Hyden, for Marcus Young.

William A. Rice, Gayle, Huff, Harlan, for Carol Coal Co.

REED, Judge.

This is a workmen's compensation case in which the circuit court held that the Work-

men's Compensation Board erred in not adjudging liability against the Special Fund under the apportionment statute, KRS 342.120. The Special Fund appeals to this court and insists that the board's action was correct. The parties are in agreement concerning the facts. In view of pronouncements in our cases decided subsequent to the time this case was processed by the board, considered by the circuit court, and briefed on this appeal, it is apparent that more fundamental considerations exist than are apparent in the briefs. We reverse the judgment of the circuit court because on the record before us the board's decision was correct.

Marcus Young's present claim for compensation arose from a work-connected back injury that occurred in February, 1968. Young's employer at that time was Carol Coal Company. It was revealed that Marcus Young had previously injured his back in April, 1961, in a work-connected accident while employed by Moore Mining Company. A claim for workmen's compensation benefits was filed by reason of this injury and the proceedings resulting therefrom culminated in an award in January, 1965.

In the 1961 injury proceedings, the board found that Young was totally and permanently occupationally disabled "with 15% thereof being a pre-existing disability because of a congenital condition that existed prior to the date of the accident; that 15% of said disability is attributable to injury from the accident, and 70% of said disability is attributable to the combination of the pre-existing condition with the injuries from the accident." The board awarded the employee compensation benefits against his employer, Moore Mining Company, computed on a basis of 15 per cent of the 100 per cent total and permanent occupational disability found to exist. The board further awarded the employee additional compensation benefits computed at 70 per cent of the total and permanent occupa-

tional disability found, these payments to be made by the Special Fund.

Apparently, Young sufficiently recovered to return to work as evidenced by his employment with Carol Coal Company. When his present claim for a new back injury was filed, the Special Fund was made a party to the proceeding. Pursuant to KRS 342.121, Dr. K. Arman Fisher was appointed by the board to examine the injured employee and report upon the extent of disability and apportionment.

Dr. Fisher reported that Young gave a history of having had a back injury in 1961, which necessitated surgery that involved a disc removal and spinal fusion; as a result of this surgery he was off work for a year. Dr. Fisher's medical opinion was that the injured employee had sustained disability to his back as a result of the injury of 1961 and subsequent surgery of 1962; that Young had a pre-existing disability due to the 1961 back injury in the amount of 25 per cent functional impairment; that he had a 10 per cent functional impairment due to "traumatic arousal of pre-existing latent disease of spine;" and an additional 10 per cent functional impairment caused by the 1968 injury alone. Young was found to be functionally impaired to the aggregate extent of 45 per cent.

The board translated these functional impairment ratings into occupational disability ratings but retained the apportionment percentages in the same ratios found by the board-appointed physician. These translations resulted in findings that the injured employee was presently totally and permanently disabled from an occupational standpoint (100%); that 55% per cent of this total occupational disability was caused by a pre-existing disability due to the 1961 back injury; that 22% per cent of the present total occupational disability was caused by what Dr. Fisher described as "traumatic arousal of pre-existing latent disease of spine," and that 22% per cent of the present total occupational disability was caused by

the 1968 injury alone. Based upon these determinations, the board awarded Young compensation benefits against Carol Coal Company, his employer at the time of the second back injury, computed at 22½ per cent of the total and permanent disability. The board construed Dr. Fisher's report insofar as it concerned the "traumatic arousal of pre-existing latent disease of spine" to mean that the functional impairment rating of 10 per cent attributable thereto was caused by a disease that was *active* and disabling rather than dormant and nondisabling at the time of the second injury. This finding is supported, of course, by the board's award made to Young in 1965 because of his 1961 back injury. The board found that the diseased condition was used as a factor for computation in the prior award; therefore, it was recognized as a contributing factor to his then disability which was adjudged to be total and permanent on an occupational basis. Hence, in the present claim, the board concluded that it could not regard the disease as dormant or latent or nondisabling.

The apportionment statute [KRS 342.120-(1)(b)] imposes liability for payment upon the Special Fund in the instance of a disease condition only where the disease condition is *dormant* and *nondisabling* prior to being aroused or brought into disabling reality by the work-connected injury. The disability attributable to this category was deemed not to be compensable, as well as was the 55% per cent attributable to the 1961 back injury.

The injured employee argues and the circuit court held that under the "whole man" doctrine followed in International Harvester v. Poff, Ky., 331 S.W.2d 712 (1959), there was no justification for the deduction of the percentage of the disability attributable to the pre-existing disease condition. We believe that the difficulty is caused by confusing the concept represented by the doctrine of the Poff case with the concept represented by the statutory scheme of a second injury

fund. Under the Poff doctrine, the inquiry is directed to the question of liability for compensation between the employer and the employee.

■ "Where [an employee] has had a compensable disability, received his compensation and returned to work and then receives a subsequent independent injury which incapacitates him, the prior injury should not be deducted." Cabe v. Skeens, Ky., 422 S.W.2d 884 (1967). In such instances, the key word is "independent." We have emphasized the importance of that word in Young, Commissioner of Labor et al. v. Campbell et al., Ky., 459 S.W.2d 781 (rendered November 6, 1970). Therefore, if the second injury is independent and will in itself alone produce total and permanent disability, the employer is liable and no question of apportionment between the employer and the Special Claim Fund under the second injury fund statute arises.

■ If, however, the subsequent injury would not alone and of itself have caused total disability, and the employee's condition of disability following the subsequent injury is due to the combined effects of a previous disability and of the subsequent injury, there is a statutory scheme embodied in KRS 342.120 by which the compensation law undertakes to apportion the responsibility for payment of compensation benefits between the employer and the Special Fund, an entity which is funded by contributions from covered employers or their insurance carriers. The history and purpose of the kind of legislation represented by KRS 342.120 are discussed in Larson's Workmen's Compensation Law, section 59.31.

The apportionment statute also undertakes to allocate liability between the employer and the Special Fund where a subsequent compensable injury to the employee arouses or brings into disabling reality a dormant, nondisabling disease condition. This aspect of the statutory scheme is described by Larson as "an exceptional stat-

ute." See Larson's Workmen's Compensation Law, section 12.20, page 192.47.

In either of the categories just described, the subsequent injury does not act "independent"; rather it acts in combination with either a prior disability or with a previously present but dormant, nondisabling disease condition. In both categories the method of apportionment requires payment by the employer only for the portion of the occupational disability which would have resulted from the subsequent injury had there been no previous disability or dormant disease.

In fixing the portion of compensation benefits payable by the Special Fund in these instances where apportionment is applicable, the statute provides that after the employer's share is determined, the Fund shall be liable for the payment of remaining compensation benefits to which the resulting combined condition would entitle the employee, but from this determination there must be excluded the amount that represents all compensation benefits which the provisions of the compensation act would have afforded on account of the prior disability had it been compensable under that act.

In the instant case, the threshold issue for the board to determine was whether this was an independent injury situation where the subsequent compensable injury alone produced the total and permanent occupational disability found to exist. If Young's claim had been found to present such independent acting injury situation, the previous disability would have been irrelevant, and the employer would have been solely responsible for the payment of compensation benefits for the total occupational disability thereby produced. The board found, however, that this was a combination injury situation that produced the resulting occupational disability. When that finding was made, the question to resolve was then confined to application of the apportionment statute (KRS 342.120).

In applying the apportionment statute, the board first translated the functional impairment percentage ratings into occupational disability percentages. The overall 45 per cent functional impairment was equated to 100 per cent occupational disability. The employer's responsibility for that percentage of the total occupational disability caused by the subsequent compensable injury alone as if no previous disability or disease had contributed was determined to be 22% per cent; thus 10 per cent functional impairment was equated to 22% per cent of 100 per cent occupational disability. The functional impairment of 25 per cent attributed to the 1961 back injury was translated to 55% per cent of 100 per cent occupational disability and this was regarded as excluded from payment by the apportionment statute. The pre-existing disease condition was found responsible for 22% per cent of the ultimate occupational disability; thus the 10 per cent functional impairment attributed to this factor was equated to 22% per cent of the total occupational disability; and it was held to be uncompensable under the apportionment statute.

■ Young and the Special Fund agree that the board correctly applied the apportionment statute except for one item. Young asserts that the Special Fund is liable for the payment of 22% per cent of 100 per cent occupational disability for the determined contribution of the pre-existing disease. The Special Fund was exonerated for payment of this item by the apportionment statute. The pre-existing disease was active rather than dormant. The disease condition had been recognized as contributing to disability and used as a factor for computation in the apportionment made in the 1961 back injury claim. Therefore, it could not be regarded as dormant or nondisabling prior to the 1968 back injury. Neither the employer nor the Special Fund was liable for the percentage of the resulting disability attributed to the disease condition; it did not satisfy the requirements

**837**

prescribed by the apportionment statute to impose liability for payment by the Special Fund, the only source of possible liability for payment in the statute. Cf. Alva Coal Corporation v. Ealy, Ky., 367 S.W.2d 833 (1963). This disposes of the contentions made by the parties on this appeal.

Two recent decisions of this court would indicate that the board erred when it translated the functional impairment percentage ratings to equivalent percentages of occupational disability. We have recently held that the functional impairment rating of the pre-existing disability cannot be so translated but must be considered to be the *same* percentage of occupational disability. Young v. J. S. Greer Meat Company, Ky., 438 S.W.2d 331 (1969) as interpreted in Young v. Ashland Oil and Refining Company, Ky., 442 S.W.2d 286 (1969). In Greer, the board translated the functional impairment ratings into equivalent percentages of occupational disability. We approved the board's action and reversed the circuit court's decision that the board's award was erroneous.

In the Ashland Oil case, the board-appointed physician found that the employee was totally and permanently functionally disabled (100%). He further reported that a pre-existing disabling condition would have alone produced a disability of 15 per cent; that the subsequent compensable injury would have alone produced a disability of 15 per cent; that the amount of disability in excess of that which would have resulted simply from adding the amounts separately attributable to the pre-existing disabling condition and the subsequent compensable injury was 70 per cent. The board found that the employee was totally occupationally disabled; that the 15 per cent attributed to the pre-existing disability was a functional impairment rating that had not created occupational disability and, therefore, none of the employee's resulting occupational disability would be apportionable to the pre-existing disabling condition. This was really not a question of *translation*

of percentages (because the overall *functional* disability was fixed at *100 per cent)* but was simply a matter of refusal to treat a functional disability as having any occupationally disabling effect. The decisive holding was that the board must recognize the functional disability as having an occupationally disabling effect.

The real effect of the decisions in Greer and Ashland Oil was to require the board to recognize that the functional impairment rating evidenced some percentage of occupational disability. Nevertheless, we erroneously construed the Greer opinion to mean that the functional impairment rating was conclusive. We find unfortunate language about a "presumption" in Greer, based on older cases, but the real import of the decision, when it is read in conjunction with the facts of the case, is that the board should translate all functional impairment ratings into occupational disability percentages in apportionment cases. This was also squarely held to be proper and necessary in Columbia Coal Company v. Griffie, Ky., 425 S.W.2d 755 (1968).

It is true that in apportionment cases the assignment of a functional impairment rating to a component factor is evidence that requires the assignment of a percentage of occupational disability to that factor. This is consistent with the initial finding that the resulting occupational disability is a combination of prior disability and a subsequent compensable injury rather than an independent acting injury sufficient in itself to produce the disability regardless of previous disability. In making the translations, however, a consistent approach to the component factors for computation requires that the previous disabling condition to which a functional impairment rating is assigned must be equated to a percentage of occupational disability that represents the degree of occupational disability that existed immediately prior to the subsequent injury without regard to the effect of the subsequent injury; the percentage of occu-

pational disability attributable to the subsequent injury has always been determined on the basis of its effect alone without regard to the effect of the previous disability. The correct method is spelled out in Young, Commissioner of Labor v. Campbell, Ky., 459 S.W.2d 781 (rendered November 6, 1970).

■ The mathematical operation prescribed by the apportionment statute is essentially subtraction. The minuend is occupational disability; the remainder to be determined is occupational disability; the subtrahend must represent occupational disability and not some other quantity. The resulting whole (the resulting occupational disability in the combination-type situation to which the apportionment statute is applicable) must be the sum of all of its parts.

■ This is our construction of the statute. We will not discuss "legislative intent." The only intent of the legislature was probably to approve a compromise reached by contending groups interested in the subject. It is our task to apply the language in which the compromise is expressed. The language is imprecise and could be plausibly regarded as internally contradictory in some aspects. The buck stops here. We do not pretend to discern legislative intent. With what we sincerely hope is sufficient humility and restraint, we merely undertake to pronounce the legal consequences which flow from the language of the statute. "There is no vade mecum to guide us between a sterile literalism which loses sight of the forest for the trees, and a proper scruple against imputing meanings for which the words give no warrant." [Per Judge Learned Hand in N. Y. Trust Company v. Commissioner of Internal Revenue, 68 F.2d 19, 20 (2d Cir. 1933)].

The judgment is reversed with direction to enter a new judgment approving the board's award.

All concur.