John W. YOUNG, Commissioner of Labor of the Commonwealth of Kentucky et al., Appellants,

v.

Robert CAMPBELL and Workmen's Compensation Board of Kentucky, Appellees.

Court of Appeals of Kentucky.

Oct. 16, 1970.

As Modified Nov. 6, 1970.

Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, J. W. Craft, Jr., Craft & Haynes, Hazard, for appellants.

Richard D. Cooper, Reeves, Barret, Cooper, & Ward, Hazard, J. Keller Whitaker, Frankfort, for appellees.

PALMORE, Judge.

The appellee, Robert Campbell, sustained a herniated disc while lifting a railroad tie. His claim for workmen's compensation resulted in an award reflecting findings to the effect that although he is and for an indefinite time will continue to be totally disabled, only 66⅔% of the disability is compensable. The award was apportioned equally against the employer and the Special Fund. KRS 342.120. Upon a review of the record the Perry Circuit Court determined that the disability is fully compensable and remanded the case to the board for an award consistent with that determination. The employer and the Special Fund appeal.

Three physicians testified. All agreed that Campbell was fully disabled for the time being. Dr. Keith W. Cameron, Campbell's regular physician, was of the opinion that the disability is entirely traumatic in origin. Dr. David B. Stevens, an orthopedic surgeon, was of the opinion that the accident aggravated a pre-existing, dormant degenerative condition of the lumbar spine. Dr. K. Armand Fischer, an orthopedic surgeon appointed by the board pursuant to KRS 342.121, was of the opinion that the accident aggravated a pre-existing condition consisting of (1) hypertrophic arthritis and (2) a degenerative disc disease which already had disabled Campbell to the extent of 10% and therefore was "active" rather than "dormant." Dr. Fischer estimated his total functional impairment at 30%, of which 10% is attributable to the disease, 10% to the arthritis, and 10% to the injury. In terms of 100% occupational disability the board translated these 10% figures to 33⅓% each. The 33⅓% exclu-

sion represents the pre-existing nondormant disease as diagnosed by Dr. Fischer.

At the time of the accident Campbell was 44 years old. Over the previous five years he had been seen by Dr. Cameron 33 times in connection with problems that have no relationship to his present condition. He says he had never experienced any back trouble and Dr. Cameron says he never complained of any to him. And as mentioned above, Dr. Stevens described the pre-existing disease condition as "dormant." The only evidence that it was active (that is, actually disabling) rather than dormant is Dr. Fischer's opinion based entirely on his X-ray-findings. So it was the opinion of the Perry Circuit Court, and is Campbell's contention on this appeal, that Dr. Fischer's testimony is not sufficient to support the finding that Campbell was in fact partially disabled prior to the date of the injury.

In its order of appointment the board directed Dr. Fischer, among other things, to state the date and nature of "each prior active disability plaintiff suffered prior to November 4, 1968, and the individual percentages of disability to plaintiff's body as a whole resulting from each," to which he responded as follows:

A. "This patient had his back injured on November 4, 1968, which was a little over six months ago. However, the X rays of the patient's spine show downward shifting of the lower lumbar facets and marked spurring on the second and third lumbar vertebrae with a curvature in this region. There was rather marked narrowing of the lumbosacral disc with spurring on some of the other vertebrae. It is my opinion that due to the X-ray findings this patient had some stiffness in his back and disability before November 4, 1968, to the extent of 10 per cent partial permanent disability to the body as a whole."

Following the rendition of Dr. Fischer's report Campbell filed objections and exceptions and secured permission to take his deposition, salient portions of which are as follows:

Q. "Dr. Fischer, you stated in answer to the first question posed to you by the Workmen's Compensation Board that he had 10 per cent disability prior to the injury event. They used the word 'active,' in that question, and you received a history that he had had no prior back trouble other than what your X rays showed. Did you have any other basis to say this man had any active disability prior to the injury event?"

A. "The X rays were the fact on which I went."

Q. "Isn't it true that many times you will find X-ray abnormalities in the form of a pre-existing disease condition that would be without any physical symptoms?"

A. "Yes, you do, sometimes."

Q. "Do you have any basis to say that this man had any physical symptoms prior to the injury event of November 4, 1968, that would have caused any active disability?"

A. "Well, there wasn't any hint of that in his history, but just due to the extensive problem he had in his back, I assumed that he had."

Q. "Based upon the history of having had no symptomatology with respect to his back, would your opinion be subject to fluctuation on this particular point?"

A. "Well, our examination really has to be made from a so-called physiological and anatomical basis, and I made this on an anatomical and physical basis, finding all this disease in his spine."

Q. "But you don't actually know from his examination whether or not he had any active disability attributable to that prior to November 4, 1968, do you?"

A. "I never examined him before. I wouldn't know. That was just my estimate."

Q. "Would the fact that he gave you a history that he had had no trouble prior to that cause you opinion to be subject to fluctuation?"

A. "No, it wouldn't."

\*    \*    \*    \*    \*    \*

Q. "Dr. Fischer, you have said he has 10 per cent disability due to an active disability which pre-existed the injury. Was that 10 per cent attributable to the pre-existing disease conditions of hypertrophic arthritic and degenerative conditions in the spine?"

A. "Yes."

Q. "You have also said he has 10 per cent disability attributable to a dormant, non-disabling disease condition. Are these the same type of disease conditions, the hypertrophic arthritis and degenerative conditions of the spine?"

A. "I didn't say 'dormant.' I think we have to say this man had a degenerative disease and arthritis, because they make a difference between that, the Board does. If I say a dormant condition, I would have answered that in number 3."

Q. "Well, based upon the history, it was your understanding that these conditions were dormant since the man was working full time and had had no prior back trouble, is that correct?"

A. "Well, I was not of that opinion, otherwise I would have answered that in number 3. I did think he had a degenerative disease of his spine. That's the reason I put it down in number 7."

Q. "In legal terminology we use the term 'dormant,' if he had had no prior active trouble with the pre-existing disease you have found?"

A. "Yes, but from reviewing the pictures, I don't believe that."

Q. "In other words, you think this man had to have had some trouble before?"

A. "Yes."

Q. "But you have no basis to go on except looking at the X ray?"

A. "That's right."

■ It is our conclusion that Dr. Fischer's opinion with respect to the pre-existing disability has sufficient probative value to constitute substantial evidence in support of the board's finding. Whether X-ray photographs alone provide a justifiable basis for such an opinion is more within his competence to say than it is in ours. It calls for the judgment of a physician, not lawyers.

■ Under the exclusionary provision of KRS 342.120(4) Young v. J. S. Greer Meat Co., Ky., 438 S.W.2d 331, 332 (1969), and Young v. Ashland Oil & Refining Co., Ky., 442 S.W.2d 286, 287 (1969), appear to hold that a pre-existing functional impairment will be presumed to have constituted an occupational disability of the same degree. If so, in this instance that degree would be 10% rather than 33⅓%. Upon further consideration, however, we have concluded that this was not the intended result of those opinions, and that the proper approach is for the board to determine the percentage of occupational disability actually existing (by reason of the functional impairment) *immediately prior to the occurrence of the work-connected injury and independently of it.* The percentage thus determined then becomes that portion of the ultimate occupational disability which is noncompensable. See Young v. Young, Ky., 460 S.W.2d 832 (decided November 6, 1970).

■ In this case the board took three 10% contributing factors and translated them into 33⅓% each, totalling 100% occupational disability. The fallacy of this mechanical approach is that although Campbell's present occupational disability may be 33⅓% attributable to each of the contributing factors, it does not follow that each, independently, would have created a 33⅓% occupational disability. The object of the exclusionary provision of KRS

342.120(4) is to make noncompensable only such occupational disability as actually existed before and independently of the accident, as distinguished from the greater disabling effect it produces when combined with a compensable accident.

The apportionment statute requires first a finding of employer's liability. This is determined by the percentage of occupational disability that resulted from the subsequent injury alone and independent of any previous disability. The remainder of the liability is allocable to the Special Fund; from this remainder however, an exclusion factor must be deducted. This *factor* is determined by the percentage of occupational disability existing prior to and independent of the subsequent injury. The net liability payable by the Special Fund is the balance remaining after the exclusion factor is subtracted from the portion of liability allocable to the Special Fund. The percentages of occupational disability determined may be equal to, less than, or greater than the functional impairment rating percentages. A pre-existing functional impairment rating percentage does require the assignment of *some* percentage of occupational disability in those instances where a combination-type disability is presented which requires apportionment.

Young v. Phelps Collieries Co., Ky., 439 S.W.2d 77 (1969), Beth-Elkhorn Corp. v. Dotson, Ky., 428 S.W.2d 32 (1968), and Daugherty v. Watts, Ky., 419 S.W.2d 137 (1967), cited by Campbell for the proposition that an independent, noncompensable pre-existing disability will not reduce the compensability of a later disability are distinguishable from this case by the word "independent." If the injury alone would have produced a 100% disability regardless and independently of his pre-existing impairment, then he would be entitled to 100% compensation, but it is clear from the evidence that the pre-existing condition is an integral factor contributing to his present disability.

The board should make the determinations required and then apportion the award accordingly. The judgment was correct, however, in remanding the case to the board for reconsideration of its findings and award.

The judgment is affirmed in part and reversed in part with directions that the cause be remanded to the board for reconsideration of its findings and entry of an award consistent with this opinion.

All concur.