James R. YOCOM, Commissioner of Labor and Custodian of the Special Fund, Movant,

v.

Leila M. LOY (widow of Howard C. Loy), Smith's Transfer Corporation, and Workmen's Compensation Board of Kentucky, Respondents.

Supreme Court of Kentucky.

Oct. 31, 1978.

---

Cyril E. Shadowen, Dept. of Labor, Louisville, Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for movant.

William A. Miller, Louisville, Peter G. Deprez, Shelbyville, Ind., Armer H. Mahan, Louisville, William L. Huffman, Director, Workmen's Compensation Board, Frankfort, for respondents.

### PER CURIAM.

Discretionary review was granted to reconsider the decision in *Young v. Pugh,* Ky., 463 S.W.2d 928 (1971). After carefully considering the briefs and oral arguments of counsel, we have concluded that the decision of the Court of Appeals was correct and that the opinion written for that court by Judge Park accurately reflects our view that *Young v. Pugh* should be overruled. We adopt the opinion of the Court of Appeals as the opinion of this court. That opinion is as follows:

"PARK, JUDGE. This case arises out of a fatal heart attack suffered by Howard C. Loy on October 19, 1972, while employed as a truck driver for Smith's Transfer Corporation. Loy's widow filed a claim for workmen's compensation. The Workmen's Compensation Board held that Loy's death was compensable and apportioned liability between the employer and the Special Fund. Only 5% of the award was assessed against Smith's Transfer Corporation as attributable to the work-related incident. The remaining 95% of the liability was assessed against the Special Fund as attributable to Loy's pre-existing heart condition. Both Smith's Transfer Corporation and the Special Fund appealed from the judgment of the Jefferson Circuit Court dismissing their appeals from the order and award of the board.

In its appeal, Smith's Transfer Corporation asserts that the findings of fact by the board do not support the conclusion that Loy's death was compensable. In its appeal, the Special Fund asserts that the entire award should have been assessed against the employer on the theory that the Special Fund has no liability for an *active* pre-existing heart disease condition.

### SUFFICIENCY OF FINDINGS OF FACT

The employer argues that there is no finding of fact by the board that Loy's death arose out of and in the course of his employment as required by KRS 342.005.[1] The board clearly recognized the issue. In its opinion and award, the board stated:

The issue to be resolved is whether decedent's death arose out of and in the course of his employment.

We conclude that the board clearly answered that question in the affirmative.

█ The relevant findings of fact in the opinion and award of the board are as follows:

. . . . .

3. On October 19, 1972, decedent was employed by Defendant-employer as a truck driver. While making a run, decedent was involved in an accident in Ohio, resulting in decedent sustaining a scratch to the bridge of his nose. The accident occurred around 3:00 A.M., and no other details of the accident were given. Around 7:00 A.M., decedent got a ride from the Dayton terminal by another truck driver and according to the driver, plaintiff died around 8:00 A.M., while enroute back to Louisville.

4. The medical testimony establishes that the decedent was suffering from an advanced case of atherosclerotic heart disease. He had had a heart attack in February of 1972, and as late as October

---

1. Loy's death occurred before the effective date of the 1972 amendments to the Workmen's Compensation Act. 1972 Ky. Acts, ch. 78, Sec. 37. On the date of Loy's death KRS 342.005(1) provided:

This chapter . . . shall affect the liability of the employers subject thereto to their employes for a traumatic personal injury sustained by the employe by accident, and for disability resulting from occupational diseases as defined in this chapter, arising out of and in the course of his employment, or for death resulting from such accidental injury or occupational disease.

6, 1972, showed sign of an early stage of congestive heart failure.

5. The issue to be resolved is whether decedent's death arose out of and in the course of his employment. Obviously, the medical testimony had to be based upon the decedent's medical history. The cause of death was a heart attack as the result of ventricular fibrillation. The decedent's heart disease was so advanced that the physicians seem to agree that his death could have been caused if he were asleep. Also, it appears that mental and emotional stress, as a result of the accident, would have caused his death by virtue of his heart disease. The coroner and pathologist, both of whom are physicians, were of the latter opinion. Dr. Olash, appointed pursuant to KRS 342.-121, was of the former opinion, that the work-related situation was in no way related to his death.

6. We find that from the totality of the circumstances that the evidence warrants a finding of a fortuitous unexpected injury traceable to the work by virtue of having occurred in the course of the work.

Although the board did not use the precise words, we conclude that there was a finding that Loy's death arose out of and in the course of employment by Smith's Transfer Corporation.

The accident suffered by Loy on the morning of October 19, 1972, while operating the truck of Smith's Transfer Corporation clearly arose out of and in the course of his employment by Smith's Transfer Corporation. He suffered a slight injury to his nose as a result of that accident. Giving the board's findings of fact their reasonable and obvious meaning, we conclude that the board found as a fact that the ventricular fibrillation which caused the fatal heart attack was a result of the mental and emotional stress which Loy suffered as a result of the accident which arose out of and in the course of his employment. The board's findings support the award against Smith's Transfer Corporation.

■ The circuit court did not err in affirming the award made by the board against the employer. The medical evidence that the heart attack was work related was much stronger than that presented in *Moore v. Square D Company,* Ky., 518 S.W.2d 781 (1974).

## APPORTIONMENT

The Special Fund emphasizes the finding by the board that Loy was suffering from 'advanced heart disease', that Loy had suffered a heart attack in February of 1972, and that Loy showed signs of 'an early stage of congestive heart failure' on October 6, 1972, less than two weeks prior to his fatal heart attack. The Special Fund also notes that the board construed *Moore v. Square D Company, supra,* to hold that the Special Fund was responsible for 'active pre-existing disability' attributable to heart disease. The Special Fund asserts that its liability is limited to disability resulting from a dormant non-disabling disease condition which was aroused into disabling reality by the subsequent compensable injury. Because Loy's pre-existing heart disease was 'active' rather than 'dormant,' the Special Fund claims that the employer is liable for the entire award.

In support of its argument, the Special Fund relies upon the decision in *Young v. Pugh,* Ky., 463 S.W.2d 928 (1971). In that case, the employee sustained an injury to his large toe when he stepped on a nail. The employee had been a diabetic for twenty-three years prior to the accident. Because of diabetic complications, the employee's right leg was amputated. It was conceded that the employee was totally and permanently disabled. The Workmen's Compensation Board held the employer liable only for temporary total disability. After the period of temporary total disability, all liability was imposed upon the Special Fund. The board attributed the employee's permanent disability to the arousal of a dormant non-disabling diabetic disease condition within the scope of KRS 342.-120(1)(b). In the *Pugh* case, the court set aside the opinion and award of the board, stating:

The disease was not dormant; it was active, effective, and progressive. The employee had been under treatment for the disease of diabetes for years. He took insulin daily to control the malady. Thus, it was a known disease condition. To say that the condition of diabetes in the instant case was quiescent, passive, resting, or static, is to ignore all of the medical testimony to the contrary. At the time the employee injured his toe, he had active, manifest, and known diabetes. The injury was superimposed on an already acutely manifest, active, and effective diabetic condition. The medical evidence taken as a whole, and as applied to the condition of the employee at the time he injured his toe, does not support the statutory requirement that the employee have a dormant nondisabling disease.

It is difficult to determine the true legislative intent and meaning of the use of the phrase 'a dormant non-disabling disease.' The phrase has importance and we must determine that meaning. We conclude that a person who has a disease condition known to him and who is being treated medically for that condition does not have a dormant nondisabling disease condition.

Having held that the employee's diabetes was not a dormant disabling condition, the court concluded that the employer was solely liable and that the claim against the Special Fund should be dismissed.

According to the July 1977 edition of Shepherd's Kentucky Citations, the *Pugh* case has never been cited as authority by this state's Supreme Court in any other opinion. The opinion in the *Pugh* case emphasized only one subsection of KRS 342.-120 and ignored the remainder of that statute as well as the provisions of KRS 342.-005. The *Pugh* decision also conflicts with other decisions of the Supreme Court, many of which are later in time. We do not believe that the *Pugh* decision is controlling in this case.

At the time of Loy's death, KRS 342.-005(2) required the board to apportion disability among the contributing causes including the work-related injury, 'pre-existing disease previously disabling,' and 'pre-existing disease not previously disabling but aroused into disabling reality by the injury or occupational disease.' Turning to KRS 342.120, we find that the Special Fund was to be made a party to the proceedings, 'if either or both' of two conditions existed.[2] Under subsection (1)(a), the Special Fund was to be joined if the employee was 'disabled.' Under subsection (1)(b), the Special Fund was to be joined if the employee had 'a dormant non-disabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident.'

█ The meaning of the language utilized in subsections (1)(a) and (b) of KRS 342.120 has been explained in two recent decisions of the Supreme Court. In *Haycraft v. Corhart Refractories Co.,* Ky., 544 S.W.2d 222 at 224 (1976), the Supreme Court stated that a pre-existing disease was 'active' if it had become 'disabling' prior to the subsequent accident. In *Yocom v. Spalding,* Ky., 547 S.W.2d 442 at 445, fn. 2 (1977), the Supreme Court stated that a 'dormant' disease condition was one which had not created any physical impairment in terms of ability to work prior to the subsequent injury. The *Pugh* opinion notwithstanding, whether the pre-existing disease condition was dormant does not turn on the

---

**2.** KRS 342.120(1) provided:

A claimant may in the original application for benefits, or either party may by motion while the case is pending, accompanied by proper allegations, and the board shall upon its own motion at any time before the rendition of the final award, cause the special fund to be made a party to the proceedings if either or both of the following appears:

(a) The employe is disabled, whether from a compensable injury, occupational disease, pre-existing disease or otherwise, and has received a subsequent compensable injury by accident, or has developed an occupational disease.

(b) The employe is found to have a dormant nondisabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease.

employee's knowledge of the condition or whether it was being treated medically prior to the subsequent injury. A pre-existing disease condition was dormant if it was non-disabling prior to the subsequent injury.

During oral argument, the Special Fund suggested that there could be a pre-existing 'active non-disabling' disease condition not covered by KRS 342.120(1). This argument is without merit. An 'active non-disabling' disease condition is a contradiction in terms. As pointed out by the Supreme Court in the *Haycraft* and *Spalding* cases, an 'active' disease condition is disabling; a 'dormant' disease condition is non-disabling.

■ Throughout these proceedings, the Special Fund has argued that the employer is liable for the entire award. This argument is without merit. Subsection (3) of KRS 342.120 expressly provided that the employer should be liable *only* for the degree of disability which would have resulted from the subsequent injury had there been no pre-existing disability or dormant but subsequently aroused disease.[3] The slight injury to Loy's nose, suffered in the accident, would not have caused his death but for his pre-existing heart disease. The board was correct in limiting the degree of the employer's liability in this case. It is immaterial whether Loy's pre-existing heart disease was disabling or not. In either event, the employer was liable only for the disability which would have resulted from the injury suffered on October 19, 1972, had there been no pre-existing heart disease. *Young v. Young*, Ky., 460 S.W.2d 832 (1970); *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971); *Yocom v. Spalding, supra.*

■ In a long line of cases, this state's highest court has held that apportionment was required when a heart attack was not wholly, but only partially, work connected. See *Grimes v. Goodlett and Adams*, Ky., 345 S.W.2d 47 (1961); *Hudson v. Owens*, Ky., 439 S.W.2d 565 (1969) (dictum); *Moore v. Square D Company, supra.* The board did not err in attributing only 5% of the causation of Loy's heart attack to the work-related truck accident.

■ Although the liability of the employer was properly limited in this case, it does not necessarily follow that the Special Fund was responsible for the remaining 95% of causation of the fatal heart attack. Under subsection (4) of KRS 342.120, any prior disability attributable to Loy's pre-existing heart disease should have been excluded from consideration.[4] The board should have determined the percentage of occupational disability existing prior to the truck accident on October 19, 1972, and the percentage of prior occupational disability should have been excluded in determining the percentage of causation for which the Special Fund was liable. *Young v. Campbell*, Ky., 459 S.W.2d 781 (1970); *Young v. Young, supra; Yocom v. Spalding, supra.* If Loy's pre-existing heart disease had resulted in functional impairment prior to the injury of October 19, 1972, the board would have been required to assign some percentage of occupational disability to the pre-existing condition. *Young v. Campbell, supra;*

3. KRS 342.120 provided:

> If it is found that the employe is a person mentioned in subsection (1)(a) or (b) and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no pre-

> existing disability or dormant but aroused disease condition.

4. KRS 342.120(4) provided:

> The remaining compensation for which such resulting condition would entitle the employe, including any compensation for disability resulting from a dormant disease aroused into disabling reality by the injury or occupational disease, but excluding all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder, shall be paid out of the special fund provided for in subsection (1) of KRS 342.122.

*Griffin v. Booth Memorial Hospital,* Ky., 490 S.W.2d 736 (1973); *Yocom v. Spalding, supra.*

■ In light of the advanced stage of Loy's pre-existing heart disease, it is difficult to see how the board could have avoided finding that there was prior functional impairment and occupational disability. Nevertheless, this issue was never presented to the board. At no time did the Special Fund claim that there was prior occupational disability which was non-compensable under KRS 342.120(4). The Special Fund argued only that the employer was responsible for the entire consequences of Loy's death. Loy's widow was never required to meet a claim that Loy had a pre-existing occupational disability which was non-compensable. Even though the Board may have erred in failing to find some degree of prior occupational disability for which the Special Fund was not liable, this issue cannot be raised for the first time on appeal. *Robinson Tool & Die v. Gross,* Ky., 432 S.W.2d 443 (1968); *Pittsburg & Midway Coal Mining Co. v. Rushing,* Ky., 456 S.W.2d 816 (1969). Because the argument that Loy suffered from a pre-existing non-compensable occupational disability was never raised by the Special Fund before the board, the circuit court did not err in dismissing the Special Fund's appeal from the award of the board."

The case of *Young v. Pugh,* Ky., 463 S.W.2d 928 (1978) is hereby overruled and should no longer be considered authority. The decision of the Court of Appeals is affirmed.

All concur.