# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 24, 2008
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

## FINAL

2007-SC-000236-WC

DATE 5-15-08 Ella Crouth D.C

BROWN LOE NEACE                                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                           2006-CA-001328-WC
                             2006-CA-001459-WC
         WORKERS' COMPENSATION BOARD NO. 05-00381

ASPLUNDH TREE EXPERT CO., INC.;
HON. R. SCOTT BORDERS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                              APPELLEES

**AND**

2007-SC-000268-WC

ASPLUNDH TREE EXPERT CO., INC.                        CROSS-APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                           2006-CA-001328-WC
                             2006-CA-001459-WC
         WORKERS' COMPENSATION BOARD NO. 05-00381

BROWN LOE NEACE;
HON. R. SCOTT BORDERS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                       CROSS-APPELLEES

**MEMORANDUM OPINION OF THE COURT**

An Administrative Law Judge (ALJ) determined that <u>Gray v. Trimmaster</u>, 173 S.W.3d 236 (Ky. 2005), required the employer's motion to file a tardy Form 111 to be overruled and all allegations found in the claimant's application for benefits to be admitted except the extent and duration of disability. The ALJ found the claimant to be permanently and totally disabled and relied on the "whole man" doctrine as the basis not to exclude pre-existing disability. The Workers' Compensation Board (Board) held that KRS 342.270(2) and 803 KAR 25:010, § 5(2) would permit a tardy Form 111 to be filed upon a showing of good cause, vacated that portion of the decision and remanded for further consideration. It determined that the ALJ did not err in awarding a total disability. The Court of Appeals affirmed.

The claimant appeals, asserting that the 45-day period for filing a Form 111 is mandatory and that the ALJ's decision must be reinstated. In a cross-appeal, the employer asserts that the evidence compels a finding of good cause for its delay in filing a Form 111 and also asserts that the ALJ misapplied the "whole man" doctrine.

We affirm. Neither KRS 342.270(2), nor 803 KAR 25:010, § 5(2), nor <u>Gray v. Trimmaster, supra</u>, deprives an ALJ of discretion to permit a tardy Form 111 to be filed upon a showing of good cause. The ALJ did not misapply the whole man doctrine because the record contained substantial evidence that the claimant was not disabled for the purposes of KRS 342.730(1)(a) until the cumulative trauma injury became manifest and also contained substantial evidence that the injury was sufficient, by itself, to cause permanent total disability.

**I. "Good cause" as a basis to permit a tardy Form 111**

2

On March 10, 2005, the claimant filed an application for benefits in which he alleged a work-related cumulative injury to his spine. The Office of Workers' Claims issued a scheduling order on March 21, 2005, which informed the employer that a Form 111 (Notice of Claim Denial or Acceptance) was due within 45 days, i.e., on or before May 5, 2005. The employer tendered its Form 111 on May 18, 2005, after which the claimant objected on the ground that it was untimely. The benefit review conference memorandum indicates that the ALJ denied the employer's motion to file a tardy Form 111 but that the parties preserved as a contested issue whether the employer showed good cause for the delay. The ALJ extended proof time on the matter.

The employer deposed Dave Cutchin, a claims manager for its workers' compensation insurance carrier. Cutchin testified that the employer was one of the clients for which he was responsible and that he was on a leave of absence for surgery when the scheduling order was issued on March 21, 2005. He stated that he returned to work part time early in April 2005 but that it took a while to catch up with paperwork and get back to work full time. Cutchin stated that he forwarded the file to counsel on or about May 11, 2005, when he became aware of the scheduling order.

The ALJ determined that KRS 342.270(2); 803 KAR 25:010, § 5(2)(b); and Gray v. Trimmaster, supra, require a tardy Form 111 to be dismissed and that an ALJ lacks discretion to consider whether good cause exists to permit a belated filing. Thus, the ALJ refused to address the issue of good cause. The claimant asserts that the statute and regulation are mandatory and that the Board misinterpreted Gray v. Trimmaster, supra, when deciding to vacate and remand.

KRS 342.270(2) states, in pertinent part as follows:

Within forty-five (45) days of the date of issuance of the

3

notice required by this section, the employer or carrier shall file notice of claim denial or acceptance, setting forth specifically those material matters which are admitted, those which are denied, and the basis of any denial of the claim.

803 KAR 25:010, § 5 states, in pertinent part, as follows:

(2)(a) The defendant shall file a Notice of Claim Denial or Acceptance on a Form 111 - Injury and Hearing Loss within forty-five (45) days after the notice of the scheduling order or within forty-five (45) days following an order sustaining a motion to reopen a claim.
  (b) If a Form 111 is not filed, all allegations of the application shall be deemed admitted.

In Gray v. Trimmaster, supra, the employer failed to submit a timely Form 111, to introduce any proof, or to attend the benefit review conference. It filed a notice of representation and tendered a Form 111 after the conference. It appeared at the hearing but failed to assert a legal basis for concluding that KRS 342.270(2) and 803 KAR 25:010, § 5 did not require all allegations contained in the worker's application for benefits to be deemed admitted. Thus, the court did not address whether a tardy Form 111 may be filed upon a showing of good cause. It focused on the effect of the worker's allegations.

In the present case, the employer tendered a tardy Form 111 and asserted that good cause existed for the delay. The Board determined that KRS 342.270(2) and 803 KAR 25:010, § 5 did not require strict compliance with the 45-day period despite their mandatory language. It concluded that a party may obtain relief from the 45-day requirement upon a showing of good cause in the same manner that a party may obtain relief from a default judgment in a civil action.

KRS 342.270(2) requires an employer to respond within 45 days of the scheduling order and admit or deny the allegations contained in the worker's application

4

for benefits. It does not address the effect of a delay in doing so or a failure to do so. 803 KAR 25:010, § 5 operates as the equivalent of a default judgment provision. Its purpose is to facilitate the prompt and orderly resolution of claims.

In a civil action, CR 8.02, CR 8.04, and CR 12.01 operate to admit an averment in a pleading if the opposing party fails to answer and deny it within 20 days of service of the summons and complaint. CR 55.01 provides for the entry of a default judgment if a party fails to defend a cause of action and lists but a few exceptions. Ryan v. Collins, 481 S.W.2d 85 (Ky. 1972), notes, however, that the courts disfavor such judgments and that CR 55.02 permits the trial court to set aside a default judgment upon a showing of good cause in accordance with CR 60.02. Liberty National Bank & Trust Co. v. Kummert, 205 S.W.2d 342 (Ky. 1947), and Howard v. Fountain, 749 S.W.2d 690, 692 (Ky. App. 1988), direct the trial court to apply a liberal standard when judging whether good cause exists and state that the exercise of discretion will not be disturbed absent abuse. Likewise, Moffitt v. Asher, 302 S.W.2d 102 (Ky. 1975), applies an abuse of discretion standard to a decision granting or denying a request under CR 6.02 to plead after the time allowed in CR 12.01 has expired.

As explained in J. B. Blanton Co. v. Lowe, 415 S.W.2d 376 (Ky. 1967), the courts afford an administrative agency's construction of its own regulation great weight when determining the regulation's meaning. Although 803 KAR 25:010, § 5 does not indicate that the time for filing a Form 111 may be enlarged after it expires, the claimant points to no statute or regulation that prohibits it from being enlarged despite a showing of good cause. The Board's construction of 803 KAR 25:010, § 5 is reasonable. It considers a worker's interest in the prompt resolution of a claim but also ensures that

5

an employer who shows good cause for tendering a tardy Form 111 will receive a day in court. We conclude, therefore, that 803 KAR 25:010, § 5 permits an employer to file a Form 111 outside the 45-day period if the ALJ finds that it has shown good cause for the delay.

The employer asserts that Mr. Cutchin's health problems established good cause for the delay, arguing that people must sometimes be away from the office for periods of time. Nonetheless, we are unwilling to adopt a rule that the absence of an insurance carrier's employee due to illness necessarily constitutes good cause for a delay in filing a Form 111. KRS 342.285 designates the ALJ as the finder of fact; therefore, the claim must be remanded for the ALJ to make findings of fact that will permit a meaningful appellate review. If the ALJ determines that the employer has not shown good cause, then the allegations contained in the application for benefits are admitted. If the ALJ determines that the employer has shown good cause, the ALJ must then consider the merits of the contested issues.

## II. "Whole man" doctrine

The claimant was born in 1948, had a third-grade education, and had worked since 1981 as a tree service laborer. The work involved using a chainsaw to cut brush from hillsides, moving trees, climbing trees, loading trucks, and using a wood chipper. He injured his shoulder and neck when a school bus hit his truck in 1995.

The claimant's complaints after the accident included neck, back, and shoulder pain and a tremor in his right hand. X-rays revealed mild degenerative changes at C5-6. Lumbar MRI revealed no abnormalities. Dr. Chaney indicated that he had no active impairment before the injury and assigned a 5% permanent impairment rating based on

a cervical strain and possible brachial plexopathy. He reported initially that the claimant's condition was not due to the arousal of a pre-existing dormant condition, but his subsequent report stated that cervical disc disease was a pre-existing dormant condition and that the accident caused it to be symptomatic.

Dr. Templin evaluated the claimant at his own request in February 1996. He diagnosed chronic neck, right shoulder, and right arm pain syndrome; degenerative cervical disc disease with changes at C5-6; and right shoulder nerve impingement syndrome. He attributed the conditions to the 1995 injury and assigned a 15% permanent impairment rating as well as work restrictions.

The parties settled the workers' compensation claim on March 12, 1996. The agreement provided for a 15% permanent partial disability that the employer and Special Fund paid in a lump sum. It characterized the injury as a "strain of the back, neck, right arm and hand."

The claimant testified that he missed no work after the 1995 injury and performed his customary duties until January 13, 2005, when Dr. Chaney diagnosed work-related carpal tunnel syndrome and took him off work. He stated that he had developed neck, back, and hand and arm pain since the settlement as well as weakness in his legs. The symptoms worsened gradually over the years and eventually prevented him from working. His application for benefits alleged that he was totally disabled by a work-related cumulative trauma injury to his neck and back and by carpal tunnel syndrome. Among other things, the contested issues included the extent to which his disability resulted from the 1995 injury and must be characterized as pre-existing active disability.

Dr. Gilbert, a neurosurgeon, saw the claimant at Dr. Chaney's request in November 1996. Examination revealed mild neck spasms and tremors in the right arm, with decreased range of motion in both arms. He attributed the symptoms to the 1995 accident and recommended diagnostic testing. He saw the claimant in August 1997 and several subsequent occasions for neck, right arm, and low back and leg pain. Cervical spine x-rays performed in May 1999 revealed abnormalities at C5-6 as well as involvement at C4-5 and C6-7. Based on subsequent diagnostic testing, Dr. Gilbert diagnosed degenerative changes and slight bulges at L4-5 and L5-S1 as well as bulging discs from C4 through C7.

Dr. Chaney's records from February 2003 through March 2005 indicate that he prescribed medication for low back pain. Based on a positive Tinel's sign and bilateral Phalen's test, he diagnosed possible carpal tunnel syndrome. He did not assign a permanent impairment rating.

Dr. Hoskins evaluated the claimant at his own request in May 2005. He received a history of the 1995 injury and of regular treatment by Dr. Chaney since then for low back pain and dysfunction. He also received a history of pain and stiffness in the neck as well as pain and numbness into the left arm and hand that began about two years earlier at work and gradually worsened over time. The claimant reported to Dr. Hoskins that a specialist had performed a nerve conduction study and informed him that the left arm symptoms originated in his neck. Dr. Hoskins reviewed the claimant's medical records and diagnostic studies since 1995 and examined him. He diagnosed a chronic lumbosacral sprain/strain, left lumbosacral radiculitis, degenerative changes at C3-4, C4-5, and C5-6, chronic cervical sprain/strain, and chronic cervical radiculitis, which

8

was worse on the left side. Dr. Hoskins attributed the conditions to the injuries that the claimant described. He assigned a 7% permanent impairment rating to the cervical spine and 8% rating to the lumbar spine, which yielded a 14% combined values rating. He stated that the claimant did not have a pre-existing active impairment and that he now lacked the physical capacity to return to his previous work.

Dr. Graulich, a neurologist, evaluated the claimant for the employer in June 2005. He received a history of the 1995 accident and of an immediate onset of neck and back pain that never resolved, then a progressive worsening of the condition. He also received a history of arm and hand symptoms that began six to eight months earlier, which Dr. Chaney considered indicative of carpal tunnel syndrome. Dr. Graulich diagnosed whiplash injuries to the neck and low back as a result of the 1995 accident. He stated that the neck and low back conditions fell within DRE category II but that the present symptoms were a continuation of the 1995 injury and the natural aging process rather than a consequence of subsequent work. He explained that the claimant did not have a subsequent injury and that he did not perform work that would be expected to cause further degenerative arthritis. In his opinion, the carpal tunnel syndrome was not significant enough to warrant a permanent impairment rating. He stated that the claimant did not retain the physical capacity to return to his customary work and should be restricted to very light labor.

The ALJ relied on Dr. Hoskins, noting that he reviewed all of the claimant's medical treatment and stated that the cervical and lumbar conditions warranted a 14% permanent impairment rating. Based on testimony from Drs. Hoskins and Graulich, the ALJ found that the claimant did not retain the physical capacity to return to the work he

9

performed at the time of injury. The ALJ determined that the claimant was permanently and totally disabled in view of his physical condition, his educational level, and the fact that he had done nothing but heavy labor for a tree service for the past 21 years, which required him to climb mountains, trees, and carry a chainsaw most of the time. Relying on Dr. Hoskins, the ALJ refused to deduct any pre-existing active disability from the award. The ALJ acknowledged that Dr. Chaney continued to treat the claimant and prescribe medication after 1995 but noted that no evidence disputed the claimant's testimony that he was fully capable of performing his job until January 13, 2005. On those bases, the ALJ found that the cumulative trauma injury was sufficient, by itself, to render him totally disabled without regard to any pre-existing disability.

The employer asserts that the ALJ misapplied the whole man doctrine because the claimant had "prior active impairment" in the same area of his spine as affected presently; therefore the past and present injuries are not independent of each other.

The whole man doctrine applies when an injured worker sustains a subsequent work-related injury. It stands for the principle that the previous injury is irrelevant if the subsequent independent injury would have been no less disabling had the worker not been injured previously.[1] The doctrine is inapplicable to the extent that disability after a subsequent injury results from the combined effects of the two injuries.[2]

The employer relies on Garrett Mining Co. v. Nye, 122 S.W.3d 513, 520-21 (Ky.

___

[1] See Schneider v. Putnam, 579 S.W.2d 370 (Ky. 1979) (disability from back injury unaffected by near blindness since childhood); Cabe v. Skeens, 422 S.W.2d 884 (Ky. 1968) (disability from silicosis unaffected by previous ankle injuries), Inland Steel Co. v. Mosby, 375 S.W.2d 268 (Ky. 1964) (disability from silicosis unaffected by leg injury), and International Harvester Co. v. Poff, 331 S.W.2d 712 (Ky. 1959) (disability from leg amputations unaffected by previous loss of an eye).

[2] Young v. Kentucky Baptist Hospital, 483 S.W.2d 148 (Ky. 1972) (disability from loss of one eye is affected by previous loss of the other eye).

10

2003), which states that Nye's 1990 and 1994 injuries were not independent because both of them affected his back and shoulders, because all of his present disability stemmed from injuries to those areas of his body, and because prior active disability from the 1990 injury existed when the 1994 injury occurred. On that basis, the employer argues that the whole man doctrine is inapplicable when a worker has sustained past and present injuries to the same part of the body. We disagree.

Garrett Mining Co. v. Nye, supra, addressed the whole man doctrine as applied at the reopening of a subsequent injury claim to which the Special Fund was a party. Nye injured his back, shoulder, and knee in 1990 and received compensation. He injured his back, chest, left shoulder, and arm in 1994. The ALJ awarded a 72% disability but found a 22% disability to be non-compensable because it represented pre-existing active disability due to the 1990 injury. The ALJ determined that a 25% disability was due to the 1994 accident for which the employer was responsible, that a 25% disability was due to the arousal of a previously dormant condition for which the Special Fund was responsible, and that a 22% disability was pre-existing and active.

When Nye's award was reopened in 2000, an ALJ found him to be 100% disabled and excluded the 22% pre-existing active disability from the award. The ALJ amended the award on reconsideration, however, to attribute the entire disability to the 1994 injury. The court determined that the ALJ erred by amending the award for four reasons: 1.) the ALJ lacked authority do so based on a reconsideration of the merits; 2.) disability from the 1994 injury was not independent from that caused by the 1990 injury; 3.) compensation for the 1990 injury must be excluded under KRS 342.120(7) because the Special Fund was a party; and 4.) the finding of 22% pre-existing active

11

disability in the initial award for the 1994 injury was binding at reopening under the doctrine of res judicata. When determining that the 1994 injury was not independent from the 1990 injury, the court relied on Young v. Young, 460 S.W.2d 832, 835 (Ky. 1970), which explained that Special Fund liability did not arise unless the worker's present condition resulted from the combined effects of a prior and subsequent injury. In such an instance, the subsequent injury was not independent and did not, by itself, cause the entire disability.

Unlike the situation in Garrett Mining Co. v. Nye, supra, the present claim arose after December 12, 1996. It does not involve Special Fund apportionment or a reopening of the 1995 traumatic accident claim. At issue is a cumulative trauma injury that became manifest in 2005.

A finding of pre-existing active disability is not required in every instance where the present injury affects the same part of the body as a previous injury. In Holman Enterprise Tobacco Warehouse v. Carter, 536 S.W.2d 461 (Ky. 1976), the worker settled the claim for a 1963 back injury for a 10% disability and sustained a subsequent back injury in 1972. He worked as a laborer and did general farm work during the period between the two injuries. Based on medical evidence that he had an underlying degenerative condition in his back but no active disability until the 1972 injury, the fact-finder applied the whole man doctrine, awarded a permanent total disability, and ordered the employer to pay the entire award. The court noted that the medical expert considered but gave no effect to the 1963 injury; therefore, the whole man doctrine applied because substantial evidence indicated that the subsequent injury in and of itself produced permanent total disability.

12

In the present case, the parties settled the 1995 injury claim. Partial disability was determined at that time under Osborne v. Johnson, 432 S.W.2d 800 (Ky. 1968). Like the present case, Newberg v. Davis, 841 S.W.2d 164, 166 (Ky. 1992), concerns claims for consecutive injuries, the first of which was settled. The Davis court determined that an ALJ must determine the actual amount of disability that existed immediately before the subsequent injury in order to exclude it as pre-existing active disability. The court explained that the figure to which the parties agreed might or might not have equaled the actual disability that the previous injury caused. Therefore, although Dr. Templin assigned a 15% permanent impairment rating to the claimant's 1995 injury and although the parties agreed to a 15% permanent partial disability when settling the claim, neither figure required a finding of pre-existing active disability in the subsequent claim for a subsequent cumulative trauma injury.

In Roberts Brothers Coal Co. v. Robinson, 113 S.W.3d 181 (Ky. 2003), an ALJ reduced the worker's total disability award by 25% based on medical evidence that 25-50% of his permanent impairment rating resulted from the natural aging process. The court determined that the decision was erroneous because the 1996 Act bases awards under KRS 342.730(1)(a) on a finding of disability that considers some of the Osborne v. Johnson, supra, factors; therefore, an exclusion from a total disability award must be based on pre-existing disability as determined under the same standard. The court explained that if a partially disabled worker returns to work without restrictions and becomes totally disabled due to a subsequent injury, the permanent impairment rating for the first injury does not compel a finding of pre-existing disability in the claim for the subsequent injury. The court noted that a properly-supported finding that no active

13

disability existed immediately before the injury would imply that the subsequent injury was totally disabling by itself.

The claimant performed heavy manual labor for the tree service for 21 years, the last ten of which were after the 1995 injury. As noted in Holman v. Carter, supra, and more recently in Ira A. Watson Department Store v. Hamilton, 34 S.W.3d 48 (Ky. 2000), the fact-finder's role is to translate percentages of impairment into a finding of occupational disability. Although the 1995 and 2005 injuries affected the claimant's cervical and lumbar spine and although Dr. Templin attributed a 15% permanent impairment rating to the 1995 injury, the record contained substantial evidence from which the ALJ could reasonably find that the claimant was not disabled for the purposes of KRS 342.730(1)(a) until the cumulative trauma injury became manifest. The record also contained substantial evidence that the cumulative trauma injury was sufficient, by itself, to cause permanent total disability.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
BROWN LOE NEACE:

MCKINNLEY MORGAN
MORGAN, MADDEN, BRASHEAR & COLLINS
921 SOUTH MAIN STREET
LONDON, KY 40741


COUNSEL FOR APPELLEE,
ASPLUNDH TREE EXPERT COMPANY:

W. BARRY LEWIS
LEWIS AND LEWIS LAW OFFICES
151 EAST MAIN STREET
SUITE 100
P.O. BOX 800
HAZARD, KY 41702-800