**Carl CABE, Commissioner, etc., Appellants,**

**v.**

**Cornwell STAMPS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 3, 1967.

As Modified on Denial of Rehearing June 14, 1968.

Stuart E. Alexander, Louisville, Thomas R. Emerson, Dept. of Labor, Frankfort, for appellants.

Robert M. Alexander, Henry Dickinson, Robert C. Carter, Glasgow, J. Keller Whitaker, Workmen's Compensation Bd., Robert Matthews, Atty. Gen., Frankfort, for appellees.

EDWARD P. HILL, Judge.

In 1964, appellee lost the sight of his right eye. The vision of his left eye has been impaired since birth. After the loss of his right eye, he was practically blind, and is now totally and permanently disabled. The Board so found and awarded maximum compensation apportioned between the employer and the Special Fund limiting the award against the employer to 100 weeks. The circuit court affirmed the Board. The employer was apparently satisfied with the award and did not appeal, but the Commissioner has appealed.

The appellee's disability is determined by KRS 342.095, which pertains to "Compensation for total disability," subsection (3) of which is as follows:

"Compensation for an injury or disability to a member shall not exceed the amount allowable for the loss of such member *unless the effects of the injury or disability extends* (sic) *beyond the member to the body as a whole so that it destroys a workman's general ability to labor or precludes him from obtaining the kind of work he is customarily able to do."* (Emphasis added.)

The liability of appellant Cabe, representing the Special Fund is controlled by KRS 342.120(1). "[T]he Special Fund * * *" may be "a party to the proceedings if either or both of the following appears: (a) The employe is disabled, whether from a compensable injury, occupational disease, pre-existing disease, or *otherwise,* and has received a subsequent compensable injury by accident or has developed an occupational disease; * * *." (Emphasis added.)

Under subsections (3) and (4) of the same statute it is stated:

"If it is found that the employe is a person mentioned in subsection (1) (a) or (b) and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused diseased condition."

"The remaining compensation for which such resulting condition would entitle the employe, including any compensation for disability resulting from a dormant disease aroused into disabling reality by the injury or occupational disease, but excluding all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder, shall be paid out of the Special Fund provided for in subsection (1) of KRS 342.122."

■ The foregoing statutes, or previous similar ones, have been interpreted by this court for many years to enable the injured workman to recover full compensation. The rule was stated in the early case of Combs v. Hazard Blue Grass Coal Corporation, 207 Ky. 242, 268 S.W. 1070 (1925), a case similar to the one at bar. This court has continued to follow this rule in many later cases, including: Tierney Mining Co. v. Myers, 280 Ky. 5, 132 S.W.2d 312 (1939); Roberts v. Black Mountain Corporation, 280 Ky. 266, 132 S.W.2d 941 (1939); Hardy Burlingham Mining Co. v. Sawyer, Ky., 254 S.W.2d 350 (1953); and International Harvester Company v. Poff, Ky., 331 S.W.2d 712 (1960).

■ The purpose of the Legislature in the enactment of KRS 342.105 (specific injury or "price tag" statute) was to expedite the determination of compensation due an injured person. It was intended that benefits relate to loss of earning capacity and not to physical injury as such.

In a discussion of "schedule benefits," or special injuries, § 58.10 of Larson's Workmen's Compensation Law, vol. 2, p. 42, states:

"This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that the benefits relate to loss of earning capacity and not to physical injury as such."

In regard to "Exclusiveness of schedule allowances," Larson states in § 58.20, vol. 2, p. 44, that:

"The great majority of modern decisions agree that if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."

Cf. Mabry v. Tiffany Stand Co., (Mo.App.) 235 S.W.2d 863 (1951); Miller v. Massman Const. Co., 169 Kan. 499, 219 P.2d 429 (1950); Arbanos v. E. I. Du Pont de Nemours & Co., 275 App.Div. 881, 88 N.Y.S. 2d 839 (1949); Zaso v. International Paper Co., 275 App.Div. 881, 88 N.Y.S.2d 740 (1949); Plumlee v. Maryland Casualty Co., 184 Tenn. 497, 201 S.W.2d 664 (1947); Lappinen v. Union Ore Co., 224 Minn. 395, 29 N.W.2d 8 (1947); Washington v. Independent Ice & Storage Co., 211 La. 690, 30 So.2d 758 (1947); Alm v. Morris Barick Cattle Co., 240 Iowa 1174, 38 N.W.2d 161 (1949); Olson v. Griffin Wheel Co., 218 Minn. 42, 15 N.W.2d 511, 156 A.L.R. 1338 (1944).

Larson goes on in § 59.00 to discuss our problem thusly:

"Apart from apportionment statutes, the employer is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury. To prevent the unfair impact of this rule on employers and the discrimination against impaired workers in hiring policy that results, most modern statutes have created a special fund which pays the difference between what the employer pays under this rule and what he would pay under an apportionment statute."

\* \* \* \* \* \*

"In the absence of an apportionment statute, the general rule is that the employer becomes liable for the entire disability resulting from a compensable accident. So, if an employee already had only one eye or leg or hand, the em-

ployer becomes liable as for total disability upon the loss of the remaining eye or leg or hand."

Of course, we have an apportionment statute in Kentucky which accounts for the Board's holding the Special Fund liable.

 The real thrust of appellant Cabe, representing the Special Fund, is that under KRS 342.120 and the rule announced in Alva Coal Corporation v. Ealy, Ky., 367 S.W.2d 833, the Special Fund is entitled to credit for 100 weeks' compensation for the amount of disability attributable to present on the job injury (right eye injury); and a further credit of 100 weeks for compensation for prior disability if it had been compensable under Chapter 342 (prior amblyopic left eye). It is admitted by all concerned that only the employer is liable for 100 weeks' compensation for the loss of employee's right eye under KRS 342.105. Whether the Special Fund is entitled to credit for another 100 weeks compensation depends upon the interpretation of KRS 342.120(3) and (4) heretofore copied. The argument of appellant Cabe overlooks the fact that KRS 342.120(4) provides that the Special Fund shall pay "the remaining compensation for which such resulting condition would entitle the employee * * * but excluding all compensation which the provisions of this chapter *would have afforded* on account of prior disabling disease or injury *had it been compensated* thereunder." (Emphasis ours.) The trouble with the argument advanced by the Special Fund is that the employee "had" not "been compensated" for the condition of his left eye, the vision of which had been impaired since birth.

It is concluded that the award of the Board properly found that the Special Fund must pay all compensation except for 100 weeks' benefits adjudged against the employer.

 The Ealy case, supra, is readily distinguished from the present case due to the fact that in Ealy the employee had "been compensated" for his first injury; whereas in the present case, the employee never has "been compensated." Apparently it was the legislative intent to prevent injured or disabled industrial workers from collecting compensation for multiple injuries in excess of the maximum compensation allowable for total permanent disability.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, PALMORE and STEINFELD, JJ., concur.

OSBORNE, J., not sitting.