John W. YOUNG, Commissioner of Labor
of the Commonwealth of Kentucky,
et al., Appellants,

v.

Frank FULKERSON et al., Appellees.

Court of Appeals of Kentucky.

Feb. 5, 1971.

Martin Glazer, Frankfort, Gemma M. Harding, Louisville, for appellants.

John K. Gordinier, Curtis & Rose, S. Lloyd Cardwell, Stites, Peabody & Helm, Louisville, for appellees.

DAVIS, Commissioner.

Frank Fulkerson obtained a workmen's compensation award based on the Board's finding of total, permanent disability. The Board assessed two-thirds of the award

(plus medical allowances) against the employer, Anaconda Aluminum Company, and its insurance carrier. The balance of the award was directed to be paid by the Special Fund. The circuit court affirmed the Board's decision. Appeals were taken by the Special Fund and the employer, but only the Special Fund has submitted brief for appellants. On the employer's motion, it was relieved from the necessity of submitting a brief. No cross-appeal has been prosecuted by Fulkerson.

The statement of the question presented is thus framed by the Special Fund:

"Can the Special Fund properly, under the provisions of KRS 342.120(4), be liable for a previous injury which has been litigated and held to be non-compensable?"

Fulkerson, while employed by Anaconda, presented claims for workmen's compensation based on three incidents involving claimed injury to his back. Two of these incidents were alleged to have occurred in May and September of 1962 and the third in January 1963. The Board denied compensation in the proceeding concerning those incidents on the basis that it found no disability as a result of any injury sustained by Fulkerson while working for Anaconda. Portions of the evidence heard in that proceeding were presented in the present hearing.

On October 18, 1965, Fulkerson allegedly suffered another back injury while performing heavy labor duty for Anaconda. He received medical attention from Dr. Wayne W. Kotcamp, an orthopedic surgeon. Ultimately, Fulkerson underwent two operations for spinal fusion, one administered anteriorly, the other posteriorly. Processing of his claim was necessarily delayed until stabilization of his medical status could be achieved.

On motion of Anaconda the Special Fund was made a party on the basis of the showing that Fulkerson had experienced previous back trouble, coupled with medical testimony that a portion of the disability suffered after the 1965 incident was ascribable to Fulkerson's previous back trouble. The Board appointed Dr. William C. Mitchell for the purpose of making the independent medical examination and report prescribed by KRS 342.121. Dr. Mitchell's report, after reciting pertinent background information, was concluded in the following paragraph:

"This man has residuals of backache and bilateral thigh pain radiation postdating two surgical procedures and not relieved as far as pain is concerned. Most of his pain would appear to be legitimate and I would not advise further surgical procedures. I feel that this man has a 60% permanent partial impairment expressed in terms of his entire back and this will likely maintain on a permanent basis. Pertinent to this I would feel that prior back difficulty that this man had is contributory to the present permanency and of this total percentage I think 20% should properly be relegated to pre-existent problems, eg (sic) prior to October, 1965. I doubt that there will be any improvement spontaneously."

Both the employer and employee filed exceptions to Dr. Mitchell's report, but the Board regarded the exceptions as lacking the required specificity and overruled them. That ruling of the Board is not challenged on this appeal.

The Board translated the reported 60% impairment into occupational disability of 100% to the body as a whole, and, as noted, ascribed one-third of the occupational disability to the preexisting condition.

The Board considered that the rationale of Cabe v. Stamps, Ky., 429 S.W.2d 361, impelled the conclusion it reached, noting that Stamps had *not* been compensated under KRS Chapter 342 for the condition of his congenitally defective left eye, and equated Fulkerson's failure to obtain compensation for his pre-existing condition with the facts in Cabe v. Stamps, supra.

The Special Fund urges that Young v. J. S. Greer Meat Company, Ky., 438 S.W. 2d 331, represents a clarification of Cabe v. Stamps, supra, and controls the present case, requiring that the Special Fund be absolved of all liability. However, this court has rendered three opinions subsequent to Young v. J. S. Greer Meat Company, supra, setting out guidelines in cases presenting the problem at hand. The litigants, as well as the Board and circuit court, were without the benefit of those three decisions when this proceeding was tried and briefed.

The three decisions referred to are as follows: Young v. Campbell, Ky., 459 S.W. 2d 781, decided October 16, 1970, modified November 6, 1970; Young v. Young, Ky., 460 S.W.2d 832, decided November 6, 1970; and Young v. Floyd County Mining Engineering Company, Ky., 460 S.W.2d 838, decided November 27, 1970. The teachings of the three cases just cited may be summarized:

 First, the Board must determine whether the subsequent injury (whether imposed on a pre-existing disability, or upon a pre-existing, dormant, nondisabling disease condition) independently would have produced the entire disability. If so, there is no apportionment, and the entire liability rests on the employer.

 If the Board determines that the subsequent injury[1] alone and of itself would not have caused the disability and the disability is ascribable to the combined effects of the subsequent injury and the pre-existing disability (or dormant, nondisabling disease condition), apportionment becomes necessary. KRS 342.120. In such a case the Board must first determine the extent of occupational disability attributable to the subsequent injury alone. The employer is responsible for the portion of the award ascribable alone to the subsequent injury.

 Next, the Board is to ascertain and fix the degree of occupational disability which existed immediately prior to the subsequent injury without regard to the effect of the subsequent injury.[2] The percentage of occupational disability which existed immediately prior to the subsequent injury is noncompensable and must be excluded from any award. The extent of disability remaining after deducting the portion attributable solely to the subsequent injury and the portion found as occupational disability immediately prior to the subsequent injury falls upon the Special Fund.

 There was no finding by the Board respecting the degree of occupational disability which existed immediately prior to the subsequent injury. It is not clear from the record whether the Board regarded the pre-existing condition as a disease condition, dormant and nondisabling, or whether it considered such condition as emanating from a disabling injury—or otherwise (as mentioned in KRS 342.120(1) (a)). Patently, one of those conditions must obtain before apportionment may be had under KRS 342.120.

The judgment is reversed with directions to remand the proceedings to the Board for appropriate findings consistent with the opinion.

All concur.

---

1. Or occupational disease.

2. Manifestly, no question of previous "disability" is presented in situations involving a prior nondisabling disease.