CURTRIGHT FUNERAL HOME and
Special Fund, Appellants,

v.

Willard CARR and Workmen's Compen-
sation Board of Kentucky, Appellees.

Court of Appeals of Kentucky.

Feb. 18, 1972.

As Modified on Rehearing May 26, 1972.

Paul C. Hobbs, Ashland, Thomas R. Emerson, Dept. of Labor, Gemma M. Harding, Frankfort, for appellants.

Harry R. Stamper, Kelsey E. Friend Law Firm, Pikeville, Workmen's Compensation Board, Frankfort, for appellees.

CULLEN, Commissioner.

The Workmen's Compensation Board awarded Willard Carr compensation for total permanent disability found by the board to have resulted from an accident in the course of Carr's employment as a general handyman for Curtright Funeral Home. The accident consisted of the herniation of an intervertebral disc, which Carr said occurred when he was attempting to dismantle a tent over a grave. An independent doctor appointed by the board reported his finding that Carr had sustained a functional disability of 30 percent, 15 percent of which was due to the accident and 15 percent due to the arousal into disabling reality of a preexisting dormant "disease" condition of arthritis and a degenerated disc. The board accepted that finding but translated the 30 percent functional disability into 100 percent occupational disability. Using the doctor's apportionment ratio, the board held the employer liable for half of the compensation and the Special Fund liable for the other half.

The employer and the Special Fund appealed *jointly* to the circuit court. Their jointly asserted ground for appeal was that Carr was *disabled* from arthritis and other causes prior to the claimed accident, and that the evidence did not warrant a finding that Carr's present disability was in any degree attributable to the claimed accident.

The circuit court entered judgment upholding the board's order. Both the employer and the Special Fund have appealed from that judgment, and again their primary contention is that the evidence did not warrant a finding that Carr's present disability was attributable to the claimed accident.

The independent doctor's opinion was that Carr had no active *disability* prior to the claimed accident, his opinion being based on "the fact that the plaintiff had been doing heavy manual labor without difficulty prior to his injury." The doctor's opinion admittedly was based on the history related to him by Carr. Our examination of the evidence convinces us that the alleged "fact" on which the doctor based his opinion was *not* a fact, the truth being that Carr was not doing heavy labor "without difficulty" prior to the accident.

It is true that Carr testified that during the few months he had worked at the funeral home before the accident he had suffered no pain or discomfort and had performed his job, including some lifting of heavy objects, with no difficulty. It also is true that the independent doctor testified that this *could* be true. However, the evidence as a whole requires the conclusion that it was not true.

The evidence showed that in the two years prior to the accident Carr had worn a large brace because of back pains, and on occasions had worn an elastic stocking on his left leg because of "weakness" or pain in that leg. He had quit an employment about one year before the accident, and remained out of employment for some time, as to the reason for which he made conflicting statements. He told the Vet-

erans' Administration he had quit "on account of pain in his low back primarily, weakness of the left leg." On the compensation hearing he first testified that he quit because the working place was too far from his home, but later he said it was on doctor's advice for heart trouble. He had sought treatment at the Veterans' Administration on complaints of back pain, within 10 months prior to the accident, and at that time he was taking two or four Bufferin a day for pain.

It may be that during the three months Carr had worked at the funeral home before the accident he was able to perform some heavy labor, such as occasionally lifting caskets, but the evidence certainly does not warrant a finding that he was fully able to perform such work regularly.

If Carr were claiming compensation for his condition as it existed prior to the claimed accident, we think it would not be disputed that he had an *occupational* disability. So, when it becomes a matter of *limiting* his present claim for compensation, the existence of that disability must likewise be recognized.

■ The law is clear that except where the subsequent injury in and of itself would totally disable the worker, the percentage of his occupational disability that existed immediately prior to the injury, to be determined by the board, is noncompensable. Young v. Campbell, Ky., 459 S.W.2d 781. We think the evidence in the instant case required the conclusion that Carr did have a preexisting occupational disability, and that the board erred in finding to the contrary. See Seagram & Son, Inc. v. Lyons, Ky., 473 S.W.2d 106 (decided November 19, 1971), and Leasecraft Corp. v. Simmons, Ky., 472 S.W.2d 693 (decided November 5, 1971). The doctor's finding that there was no prior disability did not constitute probative evidence, because it was based on a history that was proved to be false.

■ The employe argues that the evidence showed that the herniated disc in and of itself would have totally disabled Carr, and therefore the prior disability may be disregarded. The argument is not valid in the light of the independent doctor's evaluation that the accident alone produced only a 15 percent functional disability, which the board translated into a 50 percent occupational disability.

The evidence showed that Carr had some preexisting *disability* attributable to arthritis; also that he had a preexisting degenerative disc condition (*not* a *disease* condition) that perhaps was *nondisabling*. It appears that his present disability may be a combination of (1) the preexisting partial disability from arthritis, (2) the subsequent partial disability from the herniated disc, (3) perhaps some partial disability due to the arousal of a preexisting nondisabling degenerative disc condition, and (4) perhaps some extent of disability that exists from the combination of the above three causes, over and above the disability that would exist from simply totaling their separate percentages.

■ Normally, under KRS 342.120, the workman would not be compensated for the first of the above-numerated percentages of disability; the employer would be liable for the second and third; and the Special Fund would be liable for the fourth. The reason the employer, rather than the Special Fund, would be liable for the third, is that a degenerative disc condition is not a *disease* condition. See Young v. Tackett, Ky., 468 S.W.2d 319. Because of the way the instant case was practiced, however, it is our opinion that the Special Fund must be charged with the third percentage of disability, that is, the percentage that may be found attributable to the lighting up of the preexisting degenerative disc condition. As stated at the outset of this opinion, the Special Fund and the employer *jointly* appealed to the circuit court from the board's order. In the joint petition for appeal there was no issue raised

as to apportionment of liability between the Special Fund and the employer, and there was no allegation that the board erred in determining that the degenerative disc condition was a *disease* condition and in making an apportionment on that basis. With respect to that apportionment the Special Fund and the employer were the adversaries. Cf. Young v. Cutler-Hammer, Inc., Ky., 469 S.W.2d 358. If the Special Fund desired a judicial review of the board's decision on this matter, it was incumbent upon the Special Fund to raise the issue in the circuit court. Having failed to do so, the Special Fund is precluded from the judicial review and is bound by the board's ruling that a degenerative disc condition is a disease condition for purposes of apportionment.[1]

It is our conclusion that the case should be remanded to the Workmen's Compensation Board, in accordance with Young v. Campbell, Ky., 459 S.W.2d 781, Young v. Fulkerson, Ky., 463 S.W.2d 118, and Mullins v. American Technical Industries, Ky., 467 S.W.2d 593, with directions to determine first, the extent of Carr's present occupational disability (which may well be total); second, to determine what degree of that disability is attributable to the subsequent injury alone (the evidence would not seem to warrant a percentage greater than the 50 percent originally found by the board), for which the employer will be held liable; third, to determine the degree of occupational disability which Carr suffered immediately prior to the subsequent injury and without regard to the subsequent injury (the evidence requires the finding of some degree of that disability), for which no compensation will be allowable; fourth, to determine what degree, if any, of Carr's present disability is attributable to the arousal into disabling reality of a preexisting, dormant, nondisabling degenerative disc condition, for which, under the procedural posture of this case, the Special Fund will be liable. If the total of the latter four separate degrees is less than the amount of Carr's present disability, the difference will be chargeable to the Special Fund.

■ Considerable argument has been made in the briefs with reference to the fact that at the time of the alleged accident Carr was drawing (and had drawn for many years) a 60 percent disability pension from the Veteran's Administration. The fact alone that he was drawing the pension is no proof that he had an *occupational* disability immediately prior to the claimed accident. The proof of that occupational disability comes from the other evidence in the case.

■ While we are of the opinion that the evidence required a finding that Carr had some degree of preexisting disability, we also are of the opinion that the evidence fully supported the board's finding that Carr sustained additional disability as a result of the claimed accident.

The judgment is reversed with directions for the entry of judgment in conformity with this opinion.

All concur.

---

1. Our holding on this point is not inconsistent with the holding on a somewhat related point in Queen City Dinette Company v. Grant, Ky., 477 S.W.2d 808 (this day decided). There, the circuit court passed on the issue of apportionment, and the only question was whether the issue had adequately been raised. Here, the circuit court did not pass on the issue and there is no contention that the issue was raised in the circuit court.