**GARRETT MINING COMPANY,**
Appellant,

v.

**Lloyd W. NYE; Robert L. Whittaker, Director of Special Fund; Hon. J. Kevin King, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2002–SC–0455–WC.

Supreme Court of Kentucky.

Oct. 23, 2003.

Rehearing Denied Jan. 22, 2004.

A. Stuart Bennett, Lexington, Counsel for Appellant.

Leonard Joseph Stayton, Inez, Counsel for Appellee Lloyd W. Nye.

Glina R. Bryant–Lentz, Kentucky Labor Cabinet, Division of Special Fund, Frankfort, Counsel for Appellee Robert L. Whittaker.

Opinion of the Court by Justice COOPER.

In this workers' compensation case, Appellant Garrett Mining Company appeals

from an opinion and award entered by an administrative law judge (ALJ) pursuant to a reopening of a previous award of benefits to Appellee Lloyd W. Nye, which increased the previous award of 50% permanent partial disability benefits to 100% total disability benefits. Both the Workers' Compensation Board and the Court of Appeals affirmed. We now affirm the ALJ's finding that Nye's disability had increased to 100% since the date of the initial award, but reverse the award insofar as it failed to exclude benefits payable for a previously determined 22% pre-existing active and, therefore, noncompensable disability.

Nye's date of birth is July 29, 1945. He has only a GED and no specialized training. Most of his work experience was in the coal mining industry, though he also worked briefly as a factory worker, assembly line worker, lathe operator, tile setter, and general laborer in the construction industry. His first work-related injury relevant to his present claim occurred on August 4, 1990, when he fell while crossing a tailpiece while in the employ of CBM Mining and sustained injuries to his back, shoulder and right knee. He subsequently filed claim number 90–30229, which he settled for a lump sum of $26,555.56, representing a 27.57% permanent partial disability of which 22.72% ($21,880.56) was paid by CBM Mining and 4.85% ($4,675.00) was paid by the Special Fund.

Nye entered the employ of Garrett Mining Company in 1993 as a "belt man." His duties included heavy lifting and shoveling. On April 1, 1994, he was injured in a work-related motor vehicle accident and suffered headaches and pain in his lower back and left leg. He did not miss any work following this accident. On August 13, 1994, he slipped and fell at work while carrying rollers weighing seventy to eighty pounds and injured his back, chest, left shoulder and arm. He has not returned to work since that date. He filed claim number 94–34477 against Garrett and the Special Fund for the injuries sustained in both 1994 accidents. On May 15, 1995, ALJ James L. Kerr consolidated claim number 90–30229 with claim number 94–34477.

On November 14, 1995, ALJ Kerr entered an opinion, award and order finding Nye to be 72% disabled. He specifically found that the April 1, 1994, accident did not cause an injury of appreciable proportions, thus did not attribute any portion of the disability to that event. However, applying former KRS 342.120 [1] and *Young v. Fulkerson,* Ky., 463 S.W.2d 118 (1971), he found that 25% of Nye's disability was attributable to the August 13, 1994, injury alone, 22% was attributable to a pre-existing active occupational disability,[2] and 25% was attributable to the arousal of a pre-existing dormant, nondisabling condition into disabling reality. Thus, 25% of the award was payable by Garrett, 25% was payable by the Special Fund, and 22% was noncompensable. No appeal was taken from ALJ Kerr's award and order.

On August 21, 2000, Nye filed a motion to reopen the award alleging an increase of disability. KRS 342.125(1)(d). In support, he attached, *inter alia,* medical reports prepared by Dr. James S. Powell, a neurosurgeon, and Dr. Michael McDonald, a urologist. The motion was granted and the claim was assigned to ALJ Kevin King for adjudication. After hearing the evi-

---

1. KRS 342.120 was amended, effective December 12, 1996, to eliminate Special Fund liability for work-related injuries. 1996 Ky. Acts (1st ex. Sess.), ch. 1, § 3.

2. The opinion mistakenly recited that Nye "settled a prior claim for an injury occurring on August 4, 1990, for 22%" and assigned that percentage to the pre-existing active and noncompensable disability.

dence on the motion, ALJ King entered an opinion, award and order on February 20, 2001, finding that Nye's occupational disability had increased from 72% to 100% and that 22% of the disability was noncompensable as due to the prior active disability previously found and adjudged by ALJ Kerr. ALJ King divided the remaining 78% compensable disability equally between Garrett and the Special Fund (as had ALJ Kerr) and awarded Nye benefits of $324.43 per week.

Nye subsequently filed a petition for reconsideration, KRS 342.281, requesting that the "whole man" theory be applied to his case so that he could be awarded benefits based on 100% disability. By order entered March 21, 2001, ALJ King granted the petition for reconsideration and amended both his findings of fact and the award, *viz:*

> [U]nder the "whole man" theory, Nye is entitled to be fully compensated for all disability attributable solely to the 1994 injury. The Administrative Law Judge finds that the entirety of Nye's current disability is attributable to the 1994 injury; therefore, Garrett and the Special Fund shall pay full benefits to Nye.

He then increased the award from $324.43 per week to $415.94 per week. Garrett appealed.

### I. SUFFICIENCY OF THE EVIDENCE.

■ Garrett first asserts that the evidence presented on reopening was insufficient to support an increase of the award. We disagree. ALJ King primarily relied on the testimony of Dr. Powell and the medical records of Dr. McDonald. Dr. Powell testified at both the original hearing and at the reopening hearing. He first saw Nye in 1995 on referral from another physician. He diagnosed cervical brachial plexopathy and possible cervical disc dis-

ease with radiculopathy. Although he did not assign an impairment rating at the time, he testified that he would have assigned a 15% rating if asked and would have restricted Nye to light work duty.

Dr. Powell next saw Nye on September 2, 1999, at which time Nye was complaining of worsening right arm symptoms and marked weakness. Dr. Powell recommended surgery, which was scheduled but then cancelled by Nye due to anxiety. Dr. Powell's diagnoses on reopening were cervical myelopathy with cauda equina syndrome and severe multilevel radiculopathy both caused by compression of the cervical spine secondary to the August 13, 1994, injury. He testified that Nye's present impairment per the AMA Guides to the Evaluation of Permanent Impairment was 60% for the cervical myelopathy with cauda equina syndrome, 35% for the severe multilevel radiculopathy, yielding a combined impairment rating of 74%. He further testified that whereas Nye had been able to perform light duty in 1995, his condition had deteriorated to the extent that he was presently incapable of any form of work. Dr. Powell recommended surgery to relieve the increased spinal cord compression but opined that, even after surgery, Nye's present physical disability would be permanent.

Nye also had developed a neurogenic bladder condition subsequent to the 1995 award that presently requires him to urinate as often as fifteen times per day. Dr. McDonald first saw Nye for treatment of his bladder complaints in July 1997. On January 22, 1998, he performed a cystoscopy and bilateral retrograde pyelogram that revealed concrete objective evidence of a neurogenic bladder condition that, according to Dr. McDonald, was related to an upper motor neuron lesion secondary to the 1994 "mine related injury." According to Dr. McDonald, this upper motor neuron

lesion has caused a number of neuromuscular problems of both upper and lower extremities, as well as the bladder, that may progress further with time.

Garrett presented other medical evidence that disagreed with the opinions of Drs. Powell and McDonald. However, since Nye prevailed on his motion to reopen, the issue on appeal is whether there was substantial evidence of probative value to support ALJ King's conclusions. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986); *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735, 736 (1984). Substantial evidence is defined as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, Ky., 474 S.W.2d 367, 369 (1971). In ascertaining whether there has been a change in occupational disability, the ALJ is both authorized and obligated to analyze not only the evidence presented upon reopening but also that which was considered at the time of the original award. *W.E. Caldwell Co. v. Borders*, 301 Ky. 843, 193 S.W.2d 453, 455 (1946). As fact-finder, the ALJ has the authority to determine the quality, character, and substance of all the evidence. *Square D Co. v. Tipton*, Ky., 862 S.W.2d 308, 309 (1993); *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418, 419 (1985). The ALJ is the sole judge of the weight and inferences to be drawn from the evidence. *Miller v. East Ky. Beverage/Pepsico, Inc.*, Ky., 951 S.W.2d 329, 330 (1997); *Luttrell v. Cardinal Aluminum Co.*, Ky.App., 909 S.W.2d 334, 336 (1995). He may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it was presented by the same witness or the same party's total proof. *Magic Coal Co. v. Fox*, Ky., 19 S.W.3d 88, 98 (2000); *Whittaker v. Rowland*, Ky., 998 S.W.2d 479, 481 (1999). The mere fact that there was evidence contrary to the ALJ's decision on reopening is insufficient to support a reversal on appeal. *Whittaker v. Rowland, supra*, at 482. We conclude that the evidence was sufficient to support ALJ King's finding that Nye's present occupational disability is 100%.

Garrett also asserts that the motion to reopen was erroneously granted because there was no evidence of any change in Nye's occupational disability since the 1995 award, *i.e.*, he was not working at the time of the initial award and he was not working when he filed his motion to reopen. For this proposition, Garrett relies on *Gro–Green Chemical Co. v. Allen*, Ky.App., 746 S.W.2d 69 (1987).

[T]he appellee had the burden of proving that he not only had sustained an increase in functional disability, but an increase in occupational disability as well. Testifying in his own behalf, the appellee admitted that he had not worked since November of 1979, nor had he applied for work. He further testified that he was unable to engage in the work for which he had been employed by the appellant at the time the settlement agreement was entered into. He stated that his condition then included swelling in his legs, muscle spasms, and difficulty, or even the impossibility, of engaging in any type of lifting. In simple terms, the appellee admitted that at the time he signed the settlement agreement, he "couldn't do any of the jobs that [he] had ever done in the past." Such testimony was not contradicted by the treating physician, Dr. Baker.

*Id.* at 70.

*Gro–Green*, however, was decided under a prior version of KRS 342.125(1) that permitted reopening only upon a showing, *inter alia*, of a "change of *occupational* disability" (emphasis added), and the evidence in that case proved only an increase

in functional impairment. *Id.* at 70. The statute was amended in 1994 to permit reopening upon a showing of a change of *"medical* condition," 1994 Ky. Acts, ch. 181, Part 7, § 27, eff. April 4, 1994 (emphasis added), and again in 1996 to permit reopening upon a showing of a "[c]hange of *disability,"* 1996 Ky. Acts (1st ex. Sess.), ch.1, § 6, eff. December 12, 1996 (emphasis added). The 1996 version of the statute is the one applicable to the reopening of this case. *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33, 36 (1991). Thus, Nye was not required to show a "change of occupational disability" as a prerequisite to a reopening but only a "change of disability." The medical reports of Drs. Powell and McDonald that were submitted in support of the motion to reopen contained evidence that Nye's disability had increased since the initial award, and that evidence was sufficient to warrant the reopening. Once reopened, the ALJ could determine the extent of occupational disability in accordance with the principles set forth in *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968). Dr. Powell's testimony that Nye was presently and permanently incapable of performing any form of work was substantial evidence supporting ALJ King's determination of total occupational disability. *Id.* at 803.

## II. LIMITATIONS.

■ Garrett mistakenly asserts that any of Nye's present disability that is the result of his neurogenic bladder condition is noncompensable because he failed to assert a claim for that condition within two years of March 11, 1995, the date of last payment of temporary total disability benefits. KRS 342.185(1). However, the neurogenic bladder condition is not a new injury but an additional disability stemming from the original injury. Because the neurogenic bladder condition did not manifest itself until several years after the

rendition of the original award, any increased disability attributable to that condition is a "change of disability" triggering the application of KRS 342.125. *Fischer Packing Co. v. Lanham,* Ky., 804 S.W.2d 4, 5 (1991).

KRS 342.185(1) applies only to the time for filing an original application for adjustment of a claim. The period of limitations applicable to a motion to reopen is stated in KRS 342.125(3) for claims originally decided after December 12, 1996, and in KRS 342.125(8) for claims originally decided before December 12, 1996. *Meade v. Reedy Coal Co.,* Ky., 13 S.W.3d 619, 621 (2000). For claims originally decided, as here, before December 12, 1996, the period of limitations within which to file a motion to reopen is "within four (4) years of the award or order or within four (4) years of December 12, 1996, whichever is later." KRS 342.125(8). Nye filed his motion to reopen on August 21, 2000, which was within four years of December 12, 1996. Thus, his claim for additional disability benefits because of the development of the neurogenic bladder condition was not barred by limitations.

## III. APPLICATION OF THE "WHOLE MAN" THEORY.

There are four reasons why it was error to apply the "whole man" theory to this case: (1) ALJ King exceeded his authority by increasing the award in response to a petition for reconsideration; (2) the "whole man" theory applies only to "independent" injuries; (3) the "whole man" theory does not apply to awards apportioned under former KRS 342.120; and (4) ALJ Kerr's 1995 finding that 22% of Nye's disability from the 1994 injury was pre-existing and noncompensable is res judicata as to that issue.

### A. Petition for Reconsideration.

KRS 342.281 provides that in considering a petition for reconsideration, "[t]he administrative law judge shall be limited in the review to the correction of errors patently appearing upon the face of the award, order, or decision . . . ." This language precludes an ALJ (or, formerly, the "old" Board) from reconsidering the case on the merits and/or changing the findings of fact. *Wells v. Beth–Elkhorn Coal Corp.*, Ky.App., 708 S.W.2d 104, 106 (1985); *see also, Ford Furniture Co. v. Claywell,* Ky., 473 S.W.2d 821, 823 (1971) (where record considered by "old" Board supported its decision, KRS 342.281 could not be used to reconsider case on the merits); *Beth–Elkhorn Corp. v. Nash,* Ky., 470 S.W.2d 329, 330 (1971) (after dismissing employee's claim, "old" Board exceeded its authority by awarding benefits on petition for reconsideration). Thus, ALJ King exceeded his authority by making additional findings and increasing the award in response to a petition for reconsideration.

### B. Independent Injury.

The "whole man" theory is that "[w]here [an employee] has had a compensable disability, received his compensation and returned to work and then receives a subsequent *independent* injury which incapacitates him, the prior injury should not be deducted." *Cabe v. Skeens,* Ky., 422 S.W.2d 884, 885 (1967) (emphasis added). "In such instances, the key word is 'independent.'" *Young v. Young,* Ky., 460 S.W.2d 832, 835 (1970). The rule is applied when the disability caused by the second injury is unrelated to and unaffected by the disability caused by the previous injury.

The two leading Kentucky cases applying the "whole man" theory, *International Harvester Co. v. Poff,* Ky., 331 S.W.2d 712 (1959) and *Schneider v. Putnam,* Ky., 579 S.W.2d 370 (1979), are perfect examples of "independent" injuries. In *Poff,* the case that first adopted the "whole man" theory in Kentucky, a worker who had lost an eye in a previous work-related accident had been compensated therefor and returned to work. He then suffered a second accident requiring the amputation of both legs. It was held that the "whole man" theory precluded deducting the disability caused by the lost eye from the award for the disability caused by the amputations. *Id.* at 714–15. The two injuries were unrelated and incapacitated the worker in different ways; obviously, the disability resulting from the amputations was not affected by the lost eye. In *Schneider,* the worker had been almost blind since early childhood but, nevertheless, was working full-time when he was disabled by a work-related injury to his back. It was held that the disability resulting from his visual impairment should not be deducted from the award for the disability resulting from his back injury. *Id.* at 372. Again, the disability resulting from the back injury was not affected by the pre-existing visual impairment, and the "whole man" theory applied. *Id.* at 371.

In contrast, the "whole man" theory was not applied in *Young v. Kentucky Baptist Hospital,* Ky., 483 S.W.2d 148 (1972), where the employee, having lost one eye during childhood, lost his other eye in a work-related accident resulting in total disability. Since the work-related accident would not have caused total disability except for the pre-existing impairment, it was held that KRS 342.120 required an exclusion reflecting the pre-existing disability. *Id.* at 150. Both injuries affected the worker's vision rather than, *e.g.,* one affecting his vision and the other his back; therefore, the "whole man" theory was not applicable. "If there had been no preex-

isting disability, [the plaintiff] would have had a good left eye and would not have sustained total disability." *Id.*

Here, both the 1990 accident and the 1994 accident injured Nye's back and shoulders (primarily cervical spine area), and all of his present disability stems from the injuries of that area of his body. Since he had a prior active disability in the same area of his present disability, the subsequent injury was not "independent" of the previous injury and the "whole man" theory does not apply.

### C. Apportioned Disability.

 Although the procedural law applicable to the motion to reopen is the law in effect at the time of reopening, *Peabody Coal Co. v. Gossett, supra,* at 36, the substantive law applicable to a reopened case is the law in effect at the time of the injury. *Maggard v. Int'l Harvester Co.,* Ky., 508 S.W.2d 777, 783 (1974). Here, that includes the apportionment procedures mandated by former KRS 342.120(7), which provided, *inter alia:*

> The remaining compensation for which such resulting condition would entitle the employee, including any compensation for disability resulting from a dormant disease or condition aroused into disabling reality by the injury or occupational disease, *but excluding all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder,* shall be paid out of the special fund . . . .

(Emphasis added.)

Thus, as recognized in *Young v. Young, supra,* at 835–36, if the case is practiced under KRS 342.120, *i.e.,* if part of the

award is to be apportioned against the Special Fund, exclusion for a prior disabling injury is required by the apportionment statute,[3] and the common law "whole man" theory simply does not apply. In fact, *Poff, supra,* distinguished two prior cases that had required an exclusion for a prior disability because those cases had been practiced under KRS 342.120 whereas *Poff* had not. *Id.* at 714.

The reason an apportionment case is different is that only in KRS 342.120, the apportionment statute, does the law expressly require that a pre-existing disability be excluded (in the form of a deduction) from the benefits otherwise payable as the result of a compensable injury or disease. *Schneider, supra,* at 371. However, *Schneider* clarified that, even then, the exclusion is required only if, as here, the pre-existing condition is a contributing factor to the disability caused by the subsequent injury. *Id.* at 372. The employee's pre-existing visual impairment in *Schneider* was not a contributing factor, thus did not require an exclusion (even though causation of the claimant's work-related back injury in *Schneider* was apportioned between the employer and the Special Fund). *Id.*

Here, both the 1990 and 1994 injuries affected the same bodily functions and the award was apportioned between the employer and the Special Fund under KRS 342.120. Thus, KRS 342.120(7) required that an exclusion for the pre-existing disability for which Nye had been previously compensated and precluded application of the "whole man" theory to this case.

### D. Res Judicata.

 A workers' compensation award can be reopened on grounds of (a)

---

**3.** In fact, KRS 342.120(7) would seem to have required an exclusion of 27.57%, which was the percentage of disability previously compensated by the award for the 1990 injury. However, as discussed more fully *infra,* ALJ Kerr's apportionment is now res judicata.

fraud, (b) newly discovered evidence, (c) mistake, and (d) change of disability. KRS 342.125(1). While KRS 342.125(7) provides that upon reopening of an award based upon an approved *settlement agreement*, "[t]he parties may raise any issue upon reopening and review *of this type of award* which could have been considered upon an original application for benefits" (emphasis added), the statute does not contain a similar provision with respect to reopening of awards adjudicated by an ALJ on the basis of the law and facts. Obviously, the intent of KRS 342.125(7) was to assure that the principle of res judicata would apply only to prior judicial determinations, not to cases that were settled between the parties. Thus, in *American Standard, Inc. v. Stephen*, Ky.App., 565 S.W.2d 158 (1978), it was held that KRS 342.125(2) [now KRS 342.125(7) ] authorized joinder of the Special Fund upon reopening and apportionment of the new award despite the fact that the Special Fund had not been a party to the original settlement agreement. *Id.* at 161.

■■■■ However, once an ALJ-adjudicated award and order becomes final, the ALJ's determinations with respect to, *e.g.*, causation, notice, apportionment, etc., cannot be readdressed under KRS 342.125 except upon an allegation of fraud, newly discovered evidence, or mistake, grounds that do not exist and are not asserted in this case. The reason, of course, is that revisiting issues previously decided is precluded by the principle of res judicata. "The doctrine of res judicata applies to the rulings of a Workmen's Compensation Board the same as it does to the decisions of a court." *Hysteam Coal Corp. v. Ingram*, 283 Ky. 411, 141 S.W.2d 570, 572 (1940). *See Keefe v. O.K. Precision Tool & Die Co.*, Ky.App., 566 S.W.2d 804, 809 (1978) (method of computing original award could not be changed on reopening

for "mistake" to conform to Supreme Court's later interpretation of computation statute in *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933 (1976)); *compare General Elec. Co. v. Morris*, Ky., 670 S.W.2d 854, 856 (1984) (on reopening of *prior settlement agreement* because of change of condition, new award could be computed in accordance with *Apache* ); *cf. Whittaker v. Cecil*, Ky., 69 S.W.3d 69, 73 (2002) (employer precluded by res judicata from challenging ALJ's apportionment decision by way of 803 KAR 25:075 § 3, a regulation permitting an employer to challenge the Special Fund's calculation of the employer's credit for commuted attorney's fees); *Whittaker v. Morgan*, Ky., 52 S.W.3d 567, 569–70 (2001) (Special Fund's failure to appeal ALJ's manner of calculating credit would have resulted in that calculation becoming the "law of the case").

> The disease condition had been recognized as contributing to disability and used as a factor for computation in the apportionment made in the 1961 back injury claim. Therefore, it could not be regarded as dormant or nondisabling prior to the 1968 injury. Neither the employer nor the Special Fund was liable for the percentage of the resulting disability attributed to the disease condition . . . .

*Young, supra*, at 836. Likewise, the pre-existing active disability attributable to Nye's 1990 back injury, having been recognized by ALJ Kerr as contributing to Nye's disability in the 1995 award, could not be disregarded by ALJ King upon reopening the same award for increased disability caused by the same injury in 2001.

Thus, while ALJ King had the authority under KRS 342.125(4) to increase Nye's award in accordance with his increased disability, he was without authority to change the apportionment of causa-

tion established in the original award and to require payment of more than 78% of maximum benefits. Nor did he have the authority, in response to a petition for reconsideration, to make new findings, apply a new theory, and increase the amount of benefits awarded.

Accordingly, the opinion of the Court of Appeals is affirmed in part and reversed in part. The order entered on March 21, 2001, is vacated and the award and order entered on February 20, 2001, is reinstated.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion with STUMBO, J., joining that dissenting opinion.

Dissenting by Justice WINTERSHEIMER.

I respectfully dissent from that part of the majority opinion that determines it was error to apply the whole man theory to this case. Otherwise, I concur in affirming the decision of the Court of Appeals.

The Administrative Law Judge applied the "whole man" theory and awarded Nye full disability benefits. The "whole man" doctrine applies where an individual suffers a subsequent work-related injury and the nature of that subsequent injury is such that it causes the individual to be totally occupationally disabled regardless of any injury previously suffered. *See Schneider v. Putnam*, Ky., 579 S.W.2d 370 (1979).

If the prior injury did not contribute to the subsequent total and permanent occupational disability, then the prior injury was not a preexisting disability for the purposes of determining the degree of occupational disability which existed immediately prior to the subsequent injury.

*Wells v. Bunch*, Ky., 692 S.W.2d 806 (1985). As such, the employer will not receive a credit for any award for the prior injury. The ALJ properly determined, pursuant to the "whole man" doctrine that Nye's total and permanent occupational disability was caused solely by the subsequent 1994 injury and thus, Garrett was not entitled to the 22 percent credit which represents the award to Nye for the 1990 injury.

Garrett argues that it and the Special Fund were denied the proper credit for the prior awards. It contends that the ALJ should have excluded the 22 percent prior active disability that was due to the 1990 work-related injury. Further, it argues that the prior award of 50 percent occupational disability awarded as a result of the August 1994 injury would likewise be excluded as active, preexisting and noncompensable, thereby limiting Nye's recovery to 28 percent occupational disability. I cannot agree.

The ALJ determined Nye to be totally disabled as a result of the deterioration that stemmed from his August 1994 injury alone. Clearly, the ALJ determined that the 1994 injury, in and of itself, was sufficient to have produced the physical and occupational worsening proven by Nye on reopening entitling him to total disability benefits. Such a finding comports with the "whole man" doctrine. Under that doctrine, even if an individual has previously been determined to have some degree of occupational disability, whether it be work-related or not, an ALJ retains the discretion to rule that a subsequent event in and of itself is sufficiently significant to render that claimant totally occupationally disabled and entitled to full benefits. *Schneider v. Putnam*, Ky., 579 S.W.2d 370 (1979) and *International Harvester v. Poff*, Ky., 331 S.W.2d 712 (1959). Consequently, because the 1994 injury by itself resulted

in a total disability, no exclusion is required.

A prior determination which made an active impairment rating under circumstances such as involved here does not necessarily constitute res judicata. Res judicata does not attach if the issue at stake was not specifically decided in the prior proceeding or, even if decided, was not essential to the final decision of the case. *Woodbridge INOAC v. Downs,* Ky., 864 S.W.2d 306 (1993). In the 1995 opinion and award, the ALJ found that the August 1994 injury produced a 50% permanent partial disability. Consequently, the finding that the 1990 injury also produced a 22% active disability was not essential to the overall decision of the ALJ in 1995. No error occurred.

The opinion of the Court of Appeals should be affirmed totally.

STUMBO, J., joins this dissenting opinion.