### R.J. CORMAN RAILROAD CONSTRUCTION, Appellant,

v.

Brian HADDIX; Vicki G. Newberg, Acting Director of Special Fund; Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees,

and

Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Brian HADDIX; R.J. Corman Railroad Construction; Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 93–SC–269–WC, 93–SC–301–WC.

Supreme Court of Kentucky.

Nov. 24, 1993.

David L. Murphy, Scott C. Wilhoit, Clark, Ward & Cave, Louisville, for R.J. Corman R.R. Const.

Wolodymyr I. Cybriwsky, Timothy Parker, Prestonsburg, for Haddix.

Peter J. Naake, Joel D. Zakem, Labor Cabinet, Special Fund, Louisville, for Newberg.

## OPINION OF THE COURT

Claimant was injured while taking out a railroad crossing when he was struck from behind by a tamping machine. In his Form 101 application for adjustment of claim he indicated injuries to his right ribs, right side of face, L3–L4 back injury, and concussion. Through medical testimony it was suggested that claimant may also have developed a psychological problem as the result of the accident.

In an opinion rendered March 29, 1991, the Administrative Law Judge (ALJ) awarded temporary total disability benefits and medical benefits but dismissed the claim for permanent occupational disability on the grounds that claimant had not sustained an injury of appreciable proportions. Regarding the psychological aspect of the claim, the ALJ summarily concluded that any psychological problems were not part of this claim and that there was no indication that they were particularly work-related.

There are three issues in this case: (1) whether the ALJ made sufficient findings of fact, (2) whether the ALJ properly relied upon a disputed medical report, and (3) whether the employer waived any objection to the payment of medical bills not challenged within 30 days.

The Board summarized its holding as follows:

We conclude that the finding by the ALJ that Haddix' psychological problems were not part of his claim, nor were they work-related was error in the face of uncontradicted medical evidence to the contrary. We further conclude that the admission by the ALJ, of the "Brooks/Bean" letter report as evidence was in contradiction of 803 KAR 25:011, Section 13(3). Lastly, we conclude that the 30–day time period for the payment of medical bills submitted under KRS 342.020(1) apply at any time following a work-related injury, during litigation of a claim, and to post-award disputes.

The Board reversed and remanded the claim to the ALJ for a determination of occupational disability, if any, resulting from Haddix's psychological claim, and for a determination of which medical bills were submitted to the employer that were not challenged or paid within 30 days of receipt of same.

The Court of Appeals affirmed the decision of the Board citing *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992).

Claimant failed to make a specific allegation of a psychological condition on the initial application, and the ALJ simply stated that although from "some of the evidence, it is suggested that plaintiff may be having some psychological problems, ... these are not part of the claim and there is no indication that they are particularly work-related." The Board concluded, however, that the ALJ's failure to address uncontradicted medical and lay evidence of claimant's psychological condition constituted a compelling reason to reverse. The Board noted, citing *Equitable Bag Company v. Hamblin*, Ky.App., 478 S.W.2d 722 (1972), that strict rules of construction are not required in Kentucky Workers' Compensation proceedings, and therefore any claim for a psychological condition had not been waived.

On appeal to this Court, the employer, R.J. Corman Railroad Construction (Corman), notes that in reversing the ALJ the Board stated that the evidence was "clearly contradictory" to the conclusion reached by the ALJ. Because the test on appeal for a losing claimant is whether or not the evidence compelled a different result, *Roberts v. Estep*, Ky., 845 S.W.2d 544 (1993), Corman insists that the Board employed an incorrect standard of review.

The Board stated that it agreed with claimant's position that "the ALJ's failure to address uncontradicted medical and lay evi-

dence of his psychological condition constitutes a compelling reason to reverse the ALJ's decision." We think it is clear from the Board Opinion that it believed the ALJ's failure to address the evidence regarding claimant's psychological condition compelled a different result or at least compelled some explanation by the ALJ, and therefore the Board remanded for reconsideration and a determination based on that evidence.

Claimant submitted the testimony of Dr. Cornett who stated that claimant was 50% functionally impaired due to a post-traumatic psychoneurosis with stress syndrome and anxiety. Also, Dr. Mackenhauser ascribed an additional 3% functional impairment due to anxiety, depression, and sleep disturbance as the result of head trauma, pain, and anxiety about the job situation. The ALJ included this testimony in her lengthy summary of the medical evidence, but never elaborated on her finding that any psychological problems were noncompensable.

■ Claimant's petition for reconsideration requested further findings regarding this evidence. We agree with the Board that further explanation is justified. It is unclear whether the ALJ believed that a claim for a work-related psychological condition was unperfected and therefore not properly before her, or whether there was simply insufficient evidence to support an award on that basis. Because there is at least some evidence on this point and it was addressed to some degree in claimant's brief or reply brief before the ALJ, we agree that a more thorough discussion is warranted and therefore the Board's decision to remand was proper.

■ In dismissing the claim for permanent disability benefits, the ALJ stated that she found the testimonies of Drs. Primm and Brooks and/or Bean more persuasive than claimant's evidence. There was a discrepancy regarding the Brooks/Bean report submitted by the employer because it bore a stamped signature of Dr. Brooks although claimant testified that he had been seen by Dr. Bean. KRS 342.033 permits the introduction of written medical reports and directs the Board to promulgate administrative regulations prescribing the format and content of written medical reports. 803 KAR 25:011 § 13(3) provides that any written medical report "shall be signed by the physician making the report, bearing an original signature. A reproduced medical report which is not originally signed is not admissible as evidence unless accompanied by an originally signed affidavit from the physician or the submitting attorney verifying the contents of the report." Because the Brooks/Bean report did not comply with the regulation, the Board held that it should not have been considered by the ALJ.

Corman maintains that it was not reversible error for the ALJ to rely upon the Brooks/Bean report, even though it was unclear which physician actually examined claimant and which physician actually completed the report, since both doctors are Board-certified neurosurgeons who are in practice together. The regulation provides that medical reports "shall" be signed by the physician making the report. A reproduced medical report which is not originally signed is not admissible as evidence unless accompanied by an originally signed affidavit from the physician or the submitting attorney verifying the contents of the report. 803 KAR 25:011 § 13(3).

It is clear from the regulation that the goal is to correctly identify the examining physician. We do not believe this requirement is too stringent. However, the ALJ placed the onus on the claimant, the party with the least interest in verifying the report, to correct the misconception. The report was submitted by the employer, and we do not understand why the employer did not rectify the situation. In any event, on remand the ALJ may direct the employer to verify the contents of the report in accordance with KAR 25:011 § 13(3) if possible. If the report is not verified, then it may not be relied upon.

■ The Board also agreed with the claimant that since Corman failed to contest medical bills within 30 days from the date it received those bills, Corman had waived any objection under *Phillip Morris, Inc. v. Poynter*, Ky.App., 786 S.W.2d 124 (1990), and *Westvaco Corporation v. Fondaw*, Ky., 698 S.W.2d 837 (1985). KRS 342.020(1) provides that in addition to all other compensation provided in this chapter, the employer shall pay for the cure and relief from the effects of an injury or occupational disease as may be reasonably required.

Corman had voluntarily paid $8,243.52 in medical expenses while the claim was pending, but chose not to pay any expenses it considered to be for the treatment of claimant's alleged psychological problems. Prior to the submission of the case, Corman filed an addendum to its brief addressing the issue of medical expenses and challenging those related to claimant's alleged psychological injury. The ALJ ruled that those expenses were not the responsibility of the employer due to her finding that any psychological problems are not part of the claim.

The Board ruled that regardless of whether the psychological condition is compensable, the medical bills associated with the treatment of that problem are Corman's responsibility since it waived any objection to payment by failure to timely contest. Corman insists that it challenged the medical expenses at the first and only opportunity it had, that is, while the decision was before the ALJ. We agree.

In *Westvaco* the claimant received an award for occupational disability. The award contained the standard language awarding medical expenses for the duration of the disability. After the award had been rendered, the employer refused to pay certain bills submitted by the employee on the grounds that they were unreasonable. The employer did not have an opportunity to present the dispute over the bills to the Board. Claimant ultimately filed suit in circuit court to enforce payment. This Court held that when the employer seeks to dispute medical and drug bills submitted by the disabled worker after an award has been rendered, the proper procedure is for the employer to file a motion to reopen and get the issue of reasonableness back before the factfinder.

KRS 342.020(1) was amended in 1987 to require employers, or their insurers, to pay medical bills submitted pursuant to that statute within 30 days of receipt of a statement for services. In *Poynter*, the Court of Appeals considered the amendment in light of *Westvaco* and held that since KRS 342.020(1) now requires the employer to pay medical expenses within 30 days, any challenge to that payment must be made, via a motion to reopen, within 30 days.

We disagree with the Board that this rule applies to medical bills submitted to an employer before an award has been made. The decision of the Board on this issue is based upon *Westvaco* and *Poynter*, which provide guidance in the application of KRS 342.-020(1). The problem, however, is that little or no attention has been given in this case to whether KRS 342.020 applies in the first place. That determination must first be made before the procedures articulated in *Westvaco* and *Poynter* are implicated.

In the case at bar, the bills were submitted to the employer two and six months before an award was entered. The employer obviously believed that the proper time to challenge payment was at the hearing before the ALJ. However, that was in excess of 30 days after the bills were received. Therefore, according to the Board and Court of Appeals decisions, the employer should have challenged payment by motion prior to the expiration of 30 days, which would also have been prior to the hearing before the ALJ, and before an award of medical benefits had ever been made.

The amendment to KRS 342.020(1) requiring the payment of medical benefits in 30 days is clearly intended to hasten payment of those medical bills that the employer is obligated to pay. Until an award has been rendered, the employer is under no obligation to pay any compensation, and all issues, including medical benefits, are justiciable. Therefore, we believe that KRS 342.-020, which addresses additional compensation for injuries, which must be determined to be work-related per KRS 342.0011(1) to be compensable, applies to medical statements received by an employer after an ALJ has determined that said bills are owed by the employer. Likewise, the rules enunciated in *Westvaco* and *Poynter* only apply post-award.

From a practical standpoint, pre-award application of the 30–day rule to either pay or contest medical costs is an exercise in futility and simply adds another step to the process. In essence, the rule requires employers to file a motion to contest in order to preserve the issue for consideration at the hearing. The ALJ would hardly be able to rule on the

motion before considering the merits of the claim and determining whether claimant is entitled to any compensation. Therefore, the motion to contest would necessarily be held in abeyance, with no real benefit derived from the extra procedural step.

We have been offered no logical reason why *Westvaco* and *Poynter* should apply to medical bills submitted to an employer during the litigation of a claim. Without a sound basis for extending the rule further, we reverse the Court of Appeals' affirmance of the Board on this point. The proper time to contest issues involved in a workers' compensation claim, including whether certain medical treatment should be at the expense of the employer, is at the hearing before the ALJ.

The decision of the Court of Appeals is affirmed in part and reversed insofar as it applied *Phillip Morris, Inc. v. Poynter*, Ky. App., 786 S.W.2d 124 (1990), to the submission of medical bills prior to an award. Therefore, resolution of that issue will depend upon the ALJ's findings on remand regarding the compensability of claimant's allegedly work-related psychological condition.

All concur.