RENDERED: NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth Of Kentucky

# Court of Appeals

NO. 2020-CA-0095-WC

STEVEN HORNUNG　　　　　　　　　　　　　　　　　　　APPELLANT


PETITION FOR REVIEW OF A DECISION
v.　　　　　　　OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-15-61305


HOMETOWN HAULING CO., INC.;
HONORABLE JONATHAN R.
WEATHERBY, ADMINISTRATIVE
LAW JUDGE; AND THE WORKERS'
COMPENSATION BOARD　　　　　　　　　　　　　　　　　APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Steven Hornung appeals from the decision of the

Workers' Compensation Board which vacated in part and remanded the award by

the Administrative Law Judge (ALJ) for failure to make sufficient factual findings

pursuant to *Finley v. DBM Technologies*, 217 S.W.3d 261 (Ky.App. 2007), as to whether Hornung's underlying pre-existing condition was symptomatic *and* impairment ratable pursuant to the American Medical Association *Guides to the Evaluation of Permanent Impairment* (AMA *Guides*). Having concluded that the Board correctly vacated the ALJ's ruling for failure to make sufficient factual findings, we affirm.

In 2013, Hornung began working for Hometown Hauling Co., Inc. (Hometown) as a residential garbage collector. He drove the garbage truck and sometimes lifted cans and garbage that the truck could not lift.

On October 26 and 29, 2015, Hornung visited his primary care physician Dr. Ajit Nanda for neck pain running into his right arm with "tingling going down my right arm into my finger and thumb" which had begun two weeks earlier and was not associated with any specific incident or injury. The X-rays Dr. Nanda ordered of Hornung's cervical spine and right shoulder were normal. Hornung was referred for an MRI and prescribed medication. He was able to continue working.

On November 10, 2015, while driving the garbage truck, Hornung suffered a work-related injury when a collision occurred. Hornung was turning left when the front bucket of the garbage truck was hit by a car which tried to pass the garbage truck on the left. Hornung testified the accident "jarred my whole body,

because it hit the front of the bucket and the whole bucket started swaying and the whole truck started swaying as I was turning the steering wheel." Hornung suffered immediate pain in the right side of his neck and testified, "I couldn't work, I couldn't hardly turn my neck . . . the pain was just unreal." He testified his symptoms afterwards were different than those he was having prior to the motor vehicle accident.

Hornung received treatment including physical therapy and injections but ultimately required a C6-7 arthroplasty which occurred on July 22, 2016. Prior to the surgery, he had right-sided neck pain, tingling into his right arm, and right shoulder pain. Hornung testified that following the surgery "the tingling in my right arm improved. My shoulder improved. The neck did not."

Hornung did not return to work for Hometown and ultimately found a similar position which did not require any heavy lifting.

The ALJ received evidence from Hornung and several treatment providers. Rather than summarize all of the copious medical records and opinions as to his condition, we only discuss the portion of the record most relevant to the diagnosis, impairment, and whether the impairment was solely from the work-related accident or also due to Hornung's pre-existing condition, focusing on the independent medical evaluations (IMEs).

Hornung had three IMEs, one each with Dr. Craig Roberts, Dr. Joseph Zerga, and Dr. Timothy Kriss. Dr. Roberts diagnosed Hornung with a cervical spine sprain/strain with herniated C6-7 cervical disc with cervical radiculopathy which required C6-7 arthroplasty with residual signs and symptoms. Dr. Roberts found that surgery was due to the work injury and Hornung had no pre-existing active conditions. Dr. Roberts assessed a DRE Cervical Category IV and 28% impairment plus 3% for pain resulting in a 30% impairment.

Dr. Zerga diagnosed Hornung with C6-7 radiculopathy. He assessed an 11% impairment pursuant to the AMA *Guides*, identified evidence of pre-existing symptoms prior to the work injury, and concluded that the impairment would be pre-existing active.

Dr. Kriss diagnosed Hornung with having cervical degenerative disc disease, cervical arthritis, cervical spondylosis, "whiplash," musculoskeletal strain, and deconditioning. He assessed DRE Cervical Category IV and 25% impairment and apportioned 9% to the November 10, 2015 injury and 16% to pre-existing active symptomatic radiculopathy. He disagreed with Dr. Roberts's 28% impairment rating because Hornung's radiculopathy completely resolved, opining this should place him at the minimal 25% impairment.

The ALJ made the following relevant findings:

11.  The ALJ is compelled to reference that the Plaintiff was an exceptional witness and that his testimony is given significant weight herein.

12.  The ALJ finds that the credibility of [Hornung's] testimony lends additional credibility to the opinion of Dr. Roberts who is the only physician who adequately accounted for [Hornung's] pain in the assessment of an impairment rating.

13.  Dr. Roberts credibility [sic] assessed a DRE Cervical Category IV with a 28% impairment, plus 3% for pain resulting in a 30% impairment per the combined values chart.  He further found that [Hornung] had no pre-existing active conditions.

14.  The ALJ finds that the assessment of Dr. Roberts is the most credible in this matter because his opinion is most consistent with the credible testimony of [Hornung].  The ALJ therefore finds based upon this credible testimony that [Hornung] has sustained a 30% whole person impairment as a result of the work injury to the cervical spine.

Hometown moved for reconsideration, arguing that although the ALJ acknowledged there was an issue as to whether there should be "exclusion for pre-existing disability/impairment[,]" the ALJ did not make findings of fact on this issue.  Hometown acknowledged the ALJ's referencing Dr. Roberts's finding that Hornung had no pre-existing active condition but stated "this was merely a statement of one expert, and did not constitute a finding as to the issue of exclusion for pre-existing disability/impairment based on review of all evidence."  Hometown stated that it "established Hornung had a pre-existing and actively

symptomatic cervical condition which was impairment ratable leading to the accident in question" and, yet, "the ALJ did not make findings of fact as to whether or not Hornung had an actively symptomatic and impairment-ratable cervical condition leading to the November 10, 2015 accident in issue" and requested such findings.

The ALJ made additional findings in its order on Hometown's petition for reconsideration:

> 1. The ALJ finds that [Hornung] was credible and convincing in his testimony that the pain he experienced as a result of the work accident was different from what he had experienced for the prior two weeks.
>
> 2. The ALJ further finds that [Hornung's] credible testimony on this point bolsters the opinion of Dr. Roberts relied upon herein that [Hornung] had no pre-existing active condition. The ALJ remains convinced by the testimony of [Hornung] and the report of Dr. Roberts and thus declines to disturb the result reached herein.

Hometown appealed, and the Board vacated and reversed the award of permanent partial disability on the basis that:

> The ALJ did not perform the appropriate analysis addressing whether Hornug's [sic] pre-existing cervical condition was "symptomatic and impairment ratable pursuant to the AMA [*Guides*] immediately prior to the occurrence of the work-related injury." In light of the above, the ALJ is directed on remand to conduct an analysis pursuant to *Finley* . . . in determining whether Hornug's [sic] pre-existing cervical condition was symptomatic and impairment ratable pursuant to the

-6-

AMA *Guides* immediately prior to the November 10, 2015 work-related injury.

On appeal before us, Hornung argues that reversal of the Board is required because the ALJ made sufficient factual findings to support the award by finding there was no pre-existing active impairment, and the ALJ's findings are supported by substantial evidence. Hornung argues that "consistent with *Wetherby v. Amazon.com*, 580 S.W.3d 521 (Ky. 2019), ALJ Weatherby did not need to apply *Finley* in this case because the ALJ adopted Dr. Roberts's opinion there was no pre-existing condition which contributed to Mr. Hornung's impairment or disability."

"It is among the functions of the ALJ to translate the lay and medical evidence into a finding of occupational disability." *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001). In order to do this, an ALJ enjoys "broad authority to decide questions involving causation." *Miller v. Go Hire Employment Development, Inc.*, 473 S.W.3d 621, 629 (Ky.App. 2015). Where medical evidence is conflicting concerning causation, the question of which evidence to believe and what inferences are to be drawn from it is the exclusive province of the ALJ. *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004); *Square D. Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993).

In making such decisions, the ALJ must provide a sufficient explanation by summarizing the conflicting evidence concerning disputed facts,

weighing the evidence to make findings of fact, and determining the legal significance of those findings to enable adequate review. *Miller*, 473 S.W.3d at 630. "Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable." *Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56, 62 (Ky. 2012) (footnote omitted).

> Our function when reviewing a decision made by the Board "is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Thus, the "standard of review with regard to a judicial appeal of an administrative decision is limited to determining whether the decision was erroneous as a matter of law." *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001).

*Comair, Inc. v. Helton*, 270 S.W.3d 909, 914 (Ky.App. 2008).

As explained in *McNutt Construction/First General Services*, 40 S.W.3d at 859 (footnote omitted):

> [O]nly those harmful changes which are proximately caused by work-related trauma are compensable pursuant to Chapter 342. Where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the

proximate cause of the harmful change; hence, the harmful change comes within the definition of an injury.

In *Finley*, 217 S.W.3d at 265, the Court built on *McNutt Construction/First General Services* by setting out the relative findings that must be made to determine whether a pre-existing condition prevents, diminishes, or is a recoverable part of a compensable permanent disability rating:

> It is well-established that the work-related arousal of a pre-existing dormant condition into disabling reality is compensable. *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854 (Ky. 2001). In its opinion, the Board correctly and succinctly set forth the law upon compensability of a pre-existing dormant condition:
>
> > What then is necessary to sustain a determination that a pre-existing condition is dormant or active, or that the arousal of an underlying pre-existing disease or condition is temporary or permanent? To be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA [*Guides*] immediately prior to the occurrence of the work-related injury. Moreover, the burden of proving the existence of a pre-existing condition falls upon the employer. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky.App. 1984).
> >
> > Alternatively, where the underlying pre-existing disease or condition is shown to have been asymptomatic immediately prior to the work-related traumatic event *and* all of the employee's permanent impairment is medically determined to have arisen after that event – due either to the effects of the trauma directly or secondary to medical treatment necessary to address previously nonexistent symptoms attributable to an

underlying condition exacerbated by the event –
then as a matter of law the underlying condition
must be viewed as previously dormant and aroused
into disabling reality by the injury. Under such
circumstances, the injured employee must be
compensated not just for the immediate physical
harm acutely produced by the work-related trauma,
but also for all proximate chronic effects
corresponding to any contributing pre-existing
condition, including any previously dormant
problem strictly attributable solely to congenital or
natural aging processes, as it relates to the whole
of her functional impairment and subsequent
disability rating, including medical care that is
reasonable and necessary pursuant to KRS
342.020.

"Thus, for a dormant condition to produce a compensable claim 'all of the employee's permanent impairment [must be] **medically determined** to have arisen after that event,' *i.e.*, the current work injury." *Wetherby*, 580 S.W.3d at 527 (quoting *Finley*, 217 S.W.3d at 265) (footnote omitted).

Although Hornung seeks to distinguish *Finley* by relying on *Wetherby* for the proposition that findings per *Finley* are not always necessary, *Wetherby* does not negate the need for the ALJ to make appropriate findings per *Finley* when *Finley* is applicable. The situation in *Wetherby* was "atypical" in that the worker had a pre-existing impairment of the cervical spine that following surgery had caused no symptoms for more than twenty years, but still had to be rated per the AMA *Guides*, even though the ALJ found it was unrelated to the current work injury as it was to a different part of the spine. *Wetherby*, 580 S.W.3d at 527-30.

-10-

In contrast, Hornung admitted to having pre-existing symptoms in the area affected by the work-related motor vehicle accident, so *Finley* was applicable and the ALJ had to take the next step and affirmatively resolve whether Hornung's previous condition was ratable or not.

Hornung contends that the ALJ's findings were sufficient, apparently concluding that by adopting Dr. Roberts's opinion that Hornung had no pre-existing active conditions, the ALJ impliedly found Hornung was asymptomatic and there could be no injury to be ratable. We disagree.

"It is clear that the parties are entitled to a sufficient explanation by the ALJ of the basis for the decision." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). The ALJ's factual findings fell short where they failed to adequately clarify the ALJ's reasoning behind a full award. To justify such an outcome, where Hometown presented evidence which could justify a carve-out for a pre-existing condition, the ALJ needed to specifically weigh and resolve why the ALJ disagreed with other doctors' conclusions linking a portion or all of Hornung's permanent impairment to a non-work-related genesis. The ALJ also needed to explain why he concluded Hornung's pre-existing condition was not symptomatic and impairment ratable, or in other words, explain why Hornung's pre-existing condition was not active and only became a disabling reality after the work-related motor vehicle accident occurred.

Not every injury that causes pain and other symptoms is disabling or will have a lasting effect in changing the body. Had the motor vehicle accident not occurred when it did, Hornung's condition may have completely resolved or been established as insignificant.

We note the word "active" is not synonymous with the mere presence of symptomology. Therefore, there is no such thing as an "active non-disabling" pre-existing condition as this is "a contradiction in terms." *Yocom v. Loy*, 573 S.W.2d 645, 650 (Ky. 1978). Instead, "an 'active' disease condition is disabling; a 'dormant' disease condition is non-disabling." *Id.* A condition being active and thus disabling requires that it be impairment-ratable. *See Finley*, 217 S.W.3d at 265.

Therefore, Dr. Roberts's opinion that Hornung had no pre-existing condition may be shorthand for saying that whatever condition he did have, it was dormant not because it had no symptomology, but because it was not disabling, and thus is not a pre-existing condition because it does not have the sort of symptoms that would make it ratable. Part of what might figure into such calculus was the fact that the previous injury did not keep Hornung from working and the X-ray he had did not show an abnormality to his cervical spine at that time. In contrast, following the work-related motor vehicle accident, a deformity attributable to the accident was found, this condition required surgery and Hornung

described his subsequent pain as subjectively much worse, and this injury kept him from working.

In *Holcim v. Swinford*, 581 S.W.3d 37, 41 (Ky. 2019), the Court affirmed where "the ALJ believed [the claimant's] testimony that his condition changed and worsened following the incident[,]" relied on medical opinion in "finding that [claimant's] worsening symptoms were a result of his work injury[,]" and in applying *Finley* found that the claimant's condition was dormant rather than pre-existing and active considering among other things "that [the claimant] had been working full time without any restriction as a heavy equipment operator for more than two decades after his cervical fusion surgery."

However, the full reasoning and analysis needed to reach a conclusion that whatever condition Hornung had did not become a disabling reality until after the work-related accident is not contained in either of the ALJ's orders. The ALJ needed to explicitly address the matter of Hornung's pre-existing condition and state whether it was symptomatic and impairment ratable immediately prior to the work-related injury, to make any such finding explicit by directly addressing the evidence. We cannot infer an adequate explanation from the sparse findings that are present as this requires too much extrapolation and may be an inaccurate

representation of what the ALJ intended by the findings made.[1]  Therefore, we agree with the Board that a more thorough discussion is warranted and its decision to vacate in part and remand was the correct one.  *See R.J. Corman R.R. Const. v. Haddix*, 864 S.W.2d 915, 917 (Ky. 1993).

Accordingly, we affirm the Board's decision vacating in part and remanding the award the ALJ granted to Hornung.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Stephanie Nicole Wolfinbarger<br>Louisville, Kentucky | Richard Christion Hutson<br>Paducah, Kentucky |

---

[1] For examples of sufficient factual findings per *Finley*, the ALJ may wish to generally consider *Armstrong Coal Company, Inc. v. Piper*, No. 2020-SC-0226-WC, 2021 WL 1133857 (Ky. Mar. 25, 2021) (unpublished) and *Kings Daughter's Medical Center v. Runyon*, No. 2013-CA-001653-WC, 2014 WL 1407316 (Ky.App. Apr. 11, 2014) (unpublished).